THOMAS HOWARD *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY
COMPANY.

June 12, 1884.

Railroad Company — Negligence—Question for Jury.—When the rate
of speed at which a railroad car is run across a street is shown, it is for
the jury to say whether, with regard to the safety of the public, that rate
was reasonable.

Same—Running Cars across Street by "Kicking."—When the mode of
running cars by "kicking,"—that is, by giving them an impetus with an
engine, and then detaching them to let the impetus take them to the
point of destination,—and the situation of the tracks, has been explained
to the jury, it is for them to say whether there is any just as proper and
convenient, and less dangerous, mode of running them across a street.

Same—Contributory Negligence—Evidence.—Evidence on the point of
contributory negligence *held* to make a case for the jury.

Plaintiff brought this action in the district court for Hennepin
county, to recover damages for personal injuries alleged to have been
caused by the negligence of defendant in the management of its cars.
The action was tried before *Koon*, J., and a jury, and plaintiff had a
general verdict for $8,000. Defendant appeals from an order refus-
ing a new trial.

The accident by which plaintiff was injured occurred at about ten
o'clock at night upon the crossing of defendant's railroad over Wash-
ington avenue, a well-travelled thoroughfare in the city of Minneap-
olis. From plaintiff's testimony it appears that he was passing along
Washington avenue, and had already crossed two railroad tracks,
avoiding a passing train on the first track, and was in the act of cross-
ing the third track, when he was knocked down and run over by two
freight cars which were being "kicked" across Washington avenue.
Both of plaintiff's legs were cut off.

The five questions submitted to the jury, with their answers, were
as follows:

*First.* "Did the defendant have a flagman with a lantern on the

street in question, and near the tracks, at the time of the accident in question?" *Answer.* "Yes. At the flag-house and on the side of the street."

*Second.* "Was defendant's servant, Kelly, with a lantern, on said street and near said tracks at the time in question?" *Answer.* "Yes. He was standing near the street car track."

*Third.* "Did the flagman or said Kelly call out to plaintiff and his companions, to notify them of their danger?" *Answer.* "Yes. At the moment the accident occurred."

*Fourth.* "Could plaintiff, if he had been looking out for them, have heard the calls of the flagman and Kelly?" *Answer.* "We think not in time to have prevented the accident."

*Fifth.* "If the plaintiff had been vigilant and careful in looking out for the cars from the time he crossed the track of the St. Louis railroad until he reached the tracks of defendant, could he, either by sight or hearing, have discovered the approach of the cars in question in time to avoid collision with them?" *Answer.* "From all the surrounding circumstances we think not."

*R. B. Galusha* and *Benton & Roberts,* for appellant.

*Wilson & Lawrence* and *H. C. Truesdale,* for respondent.

GILFILLAN, C. J.   There is no inconsistency between the general verdict and the special findings of fact.   When the manner of running the cars across the street by "kicking," and the situation of the tracks, had been explained to the jury, and the rate of speed at which they were run across shown, together with the character of the night as to darkness, and of the street as to the extent to which it was travelled, it was peculiarly the province of the jury to determine whether the rate of speed was reasonable, and whether "kicking" the cars—that is, giving them an impetus sufficient to carry them to the desired point—is a more dangerous mode of running them across a street than running them across with the engine, and whether it is any more convenient.   No one can be so ignorant of the operating of railroads as not to know that the engines can run cars at a snail's pace, while "kicking" must require considerable speed to be given at the start to carry the cars to the point of destination.   It was proper to submit the questions to the jury, though there was no expert testimony, for

the matters came within the common sense and common observation of the jury.

The question of plaintiff's contributory negligence was clearly for the jury. Of course, in approaching a railroad crossing to cross it, a man must make use of his sight and hearing to ascertain if it is safe to cross. But if, upon diligently using them, he does not learn of approaching danger, it cannot be negligence to make the crossing. Plaintiff swears that he both looked and listened, and neither saw nor heard the approaching cars till too late to escape. His companion, Otto Kirst, swears that he too looked and listened, and did not see nor hear the cars. And that their testimony was not entirely improbable was apparent from the testimony of the policemen Daly and Brady. If the jury were satisfied—and from the evidence they might have been—that the plaintiff looked and listened when he was about 14 feet from the track, and saw and heard nothing, it was for them to determine whether, under the circumstances, it was negligent in him to assume that he could walk that distance without danger.

Order affirmed.