ANTON SCHMIDT v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 3, 1901.

Nos. 12,516—(41).

83    105'
86    70

Personal Injury—Contributory Negligence.

*Held*, in an action brought to recover for injuries received by plaintiff in a collision with one of defendant's trains, that it was conclusively shown that the former was guilty of such contributory negligence as would prevent him from recovering.

Action in the district court for Anoka county to recover $25,000 for personal injuries. The case was tried before Giddings, J., and a jury, which rendered a verdict in favor of plaintiff for $5,000. From an order denying a motion for judgment notwithstanding the verdict, or for a new trial, defendant appealed. Reversed.

*W. E. Dodge, Charles S. Albert* and *Albert F. Pratt*, for appellant.

*F. D. Larrabee*, for respondent.

COLLINS, J.

In an action to recover damages received by the plaintiff in a collision with one of the defendant's trains, he obtained a verdict, and, defendant's motion for a new trial being denied, an appeal has been taken to this court.

The collision was about ten o'clock a. m., February 20, 1899, at a crossing of a street in the village of Osseo, just west of defendant's station house. The plaintiff, with his wife, was riding in a top buggy, the top being down, driving a single horse. The street crosses the railway at an angle of about thirty-three degrees. The plaintiff was driving in a northwesterly direction, while the train was running westerly. The day was clear and pleasant, with a little wind from the southeast direction. The country in the vicinity of this crossing, and for more than a mile to the east was practically level, the grade of the street being from two to four feet below that of the railway. Going towards the crossing, the plaintiff first drove over a side track, and then came to the main track, fourteen feet distant, from center to center, upon

[1] Reported in 85 N. W. 935.

which the train was running. This train consisted of nine coaches and the engine and tender, its entire length being six hundred thirty-five feet. This was a regular train, known as the "Flyer," and did not stop at Osseo. From the top of the rails to the top of the boiler of the engine was twelve feet and two inches; to the top of the cab, thirteen feet and four inches. From the top of the rails to the top of the coaches was fourteen feet and two inches. The track, running almost due east and west, was straight for more than a mile east of the place of the accident. The plaintiff testified that his horse was a very slow walker, and as he approached the crossing was not walking to exceed two miles an hour. The speed of the train was fixed by plaintiff's witnesses at forty or fifty miles an hour; so, taking the most favorable view of the testimony on this point for plaintiff, the train was running twenty-five times as fast as he was driving. As a reason why he did not see its approach, plaintiff claimed that there were several obstructions which prevented a full view of the track to the east, consisting of a cattle yard and four freight cars standing together, each thirty-three feet in length, and a fifth freight car further east, and wholly disconnected from the other four. His witnesses located the westerly car of the four as partly in the street, and within a few feet of where wagons crossed the rails, and the single car several feet east of the others.

Defendant's witnesses located the cars which stood together as entirely east of the street, fifty feet at least from where wagons usually crossed the rails, but the nearer these cars were to where plaintiff crossed, the greater would be his range of vision to the east, except when he was directly behind them, and the better his opportunity for seeing a train twelve hundred or fifteen hundred feet away.

We assume, in considering the case, that plaintiff's witnesses were correct, and that the four cars encroached upon the street, were within a few feet of the wagon track, extended over one hundred thirty-two feet east of the east end thereof, and were of the height and width of ordinary freight cars. The single car referred to was of the same length, height, and width. The other obstruction upon which plaintiff relied was a cattle yard nine

hundred ninety-nine feet to the east of the street crossing. This yard was from fifty to sixty feet square, six feet in height, made of fence boards six inches wide, with six-inch spaces. From this yard, extending to the side track, a few feet distant, was a cattle chute, and this was higher than six feet. It appears from the photographs to have been at least nine feet in height. The chute was made of the same material and with the same spaces. There were three or four lengths of snow fence in the vicinity, but the testimony would not justify the conclusion that this fence in any way interfered with plaintiff's view to the east, from which direction the train came. The obstructions relied upon as preventing plaintiff from seeing the train were, therefore, the cars and the cattle yard.

It is contended on behalf of the defendant that the testimony did not warrant a finding that its employees were negligent in failing to give the statutory signals as the train approached the crossing, and it is also contended that, from the evidence, it clearly appeared that the plaintiff drove upon the crossing in broad daylight, with an unobstructed view, without exercising proper precautions for his own safety by looking and listening, and, because guilty of contributory negligence, he cannot recover; there being no evidence tending to show that the injury was wilfully caused by the men in charge of the engine.

We are not required to pass upon the contention of the counsel that the testimony does not justify the finding of the jury as to the giving of the signals. We therefore do not stop to consider this claim, but proceed upon the assumption that defendant's negligence in this respect was fully established, and on this feature of the case that plaintiff was entitled to recover.

This brings us to a consideration of the contention that plaintiff's contributory negligence was conclusively proven, and was of such a character as to preclude any recovery for injuries sustained. This is a defense which we always approach with an inclination to sustain a verdict to the contrary, if the matter is fairly open to discussion or doubt. But if it is not, and physical facts meet and overcome verbal testimony, it is incumbent upon us to so hold, if we are properly to perform a sworn duty.

In this case we have examined the evidence with great care, and are compelled to say that it conclusively appears that the plaintiff was guilty of contributory negligence, and the jury should have so found. The train was to plaintiff's right as he approached the crossing. Nothing intervened as he drove towards the freight cars. The country was open, and the railway tracks were upon a slight embankment, a little elevated above the wagon road. From any point on the street within five hundred feet of the crossing an approaching train could be seen by any man in possession of his faculties, as was the plaintiff, until he had passed behind the cars upon the side track, within less than twenty-five feet of the place of the collision. The cattle yard, about one thousand feet east, was not over sixty feet square, and the fence around it was but six feet high. The space between the boards was such that the lower part of a train could be seen as it came from the east, while the upper part of the engine and cars, over six hundred feet in length, projected more than eight feet above the yard proper, and more than five feet above the chute, which extended from the yard to the side track,—a very few feet. This mass of machinery and car structure was in sight beyond the cattle yard when the plaintiff drove along the street, and it must have emerged from behind this slight obstruction when plaintiff was twenty-five feet, at least, from the freight cars, and about fifty feet from the point of danger,—the crossing itself. That a train of this kind could be seen when at the cattle yard, and beyond, by a person standing or sitting in a buggy, fifty feet from where the train struck plaintiff, was conclusively shown at the trial by verbal testimony as well as by photographs, and no attempt was made to contradict this proof. To go a little further into details, when the plaintiff was one hundred feet from the crossing the train must have been about twenty-five hundred feet to the east, and when he was fifty feet from the crossing the engine was about opposite the cattle yard. Then for at least six hundred feet the train was in full view. If we take the plaintiff's estimate of the rate at which his horse was walking, and the speed with which the train moved, the freight cars could not have obstructed his range of vision, and prevented him from seeing the

train, until he was within twenty-five feet of the main track,—just as he was passing behind them. Had he looked to the east when in close proximity to these cars, immediately before he drove behind them, nothing could have prevented his seeing the engine and cars rapidly approaching the street crossing, and within one thousand feet.

It is useless to claim that a train of this height, and over six hundred feet in length, could be concealed behind the cattle yard, or behind the four stationary cars, extending up to the track about one hundred thirty-five feet, and the other detached car still further east, or that either could obstruct the view so as to prevent its being seen, in whole or in part. There is no escaping the conclusion that if the plaintiff did not see the train it was through his own fault. It was there, and must have been visible. The obstructions could not hide it because they were insufficient in size, and this was demonstrated to an absolute certainty on the trial by evidence which plaintiff made no effort to overcome or explain away. These obstructions were known to plaintiff; for before he passed behind the cars on the side track he talked with his wife about the use to which they were to be put at the station. The law imposed upon him the exercise of common prudence, the duty of looking and listening before passing in rear of these cars, and it conclusively appears that he failed either to perform, or properly to perform, this duty. It is true that he testified that he looked to the east after he passed to a point where he could see beyond the cattle yard, but the manner in which the testimony was given and his hesitancy in this respect are shown by the record. When counsel asked if there was a train in sight to the east, as he looked, the answer was, "No, sir; there was not." Then ensued the following colloquy:

"Q. Did you look? A. Well, I suppose so; for I always look for a train whenever I cross the track. Q. Well, did you look? A. I think that I did. Q. Did you look? A. Yes, sir; I did."

Testifying as to his approach to the crossing, the questions and answers were as follows:

"Q. Did you look through that point [to the east] as you ap-

proached the crossing? A. I suppose that I did. Q. Did you look through there? A. I think so. Q. Is there any doubt about it? A. No, sir; there is not."

The testimony of the plaintiff's wife was equally as hesitating, as will be seen from the following excerpt from the record:

"Q. At the time that you were approaching that crossing did you look to the east to see if there was a train coming? A. Well, I never cross a track or go near the track without looking to see if there is a train coming. Q. Well, did you upon this occasion? A. Well, I most certainly did, because I never cross a track without looking."

This kind of argumentative testimony, and the evident hesitation of plaintiff and his wife about stating positively that they paid any attention to the coming of a train, suggests that they were in doubt, and were reluctant in expressing themselves without qualification; for until closely pressed by counsel they were not positive and their only reason for asserting that they did look was because of their common practice to do so. And it must not be forgotten that, according to plaintiff's testimony, the wind was favorable to his hearing the train. It was from the southeast, as before stated. No attempt was made to show why it was not heard as it came over the rails upon frozen ground. Under these circumstances, we cannot indorse and uphold the verdict by affirming the order appealed from. It must be reversed upon the ground that plaintiff's contributory negligence was conclusively established. The case is, on the facts, precisely like that of Lammers v. Great Northern Ry. Co., 82 Minn. 120, 84 N. W. 728, in which it was strongly intimated that the plaintiff's husband, who was driving the team when that accident occurred, could not possibly maintain an action for damages received by him at the same time, because guilty of contributory negligence.

Order reversed, and a new trial granted.