## W. M. LANG v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

May 31, 1912.

Nos. 17,583—(122).

**Accident at railway crossing — safety gates.**
> Upon the facts stated in the opinion, *held*, that the safety gates at a railway crossing, not having been closed as a train was approaching the crossing, nor at any time while such train was passing across, plaintiff, who observed such train, could neither consider the open gates as an invitation to cross, nor as an assurance that no train was approaching on the tracks not occupied by the passing train.

[1] Reported in 136 N. W. 297.

[Note] Duty of traveler going upon railroad crossing when gates are open, see note in 4 L.R.A.(N.S.) 521.

**Contributory negligence.**

> Evidence examined, and *held* to show contributory negligence of plaintiff, barring a recovery.

Action in the district court for Clay county to recover $1,900 for personal injuries. The answer alleged plaintiff's injuries were caused solely by his own negligence. The reply was a general denial. The case was tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $1,000. From an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed and judgment ordered for defendant.

*C. W. Bunn* and *George Hoke,* for appellant.
*Christian G. Dosland,* for respondent.

HOLT, J.

The action is for damages for injuries received in a collision at a railway crossing. Plaintiff had a verdict. The defendant moved for judgment notwithstanding the verdict, and if that was denied, then that it have a new trial. The motion was denied in toto, and defendant appeals.

Eighth street, a much traveled thoroughfare, in the city of Moorhead, runs north and south. Three tracks of the defendant railway cross at right angles. The street is paved at the crossing and sidewalk on both sides. The depot of the defendant is located on the west side of Eighth street. Four safety gates operated from a tower protect the crossing. The two north gates, when closed, are six feet north of the most northerly rail of these tracks. Each gate folds like a pair of shears and has one long and one short arm, which, when closed, fall down; the short arm extending over the sidewalk, and the long arm extending over and to the center of the street, where it meets the long arm from the gate on the other side of the street. When so closed, these arms are about four feet from the ground.

At about four p. m. on March 9, 1910, a bright and clear day, plaintiff came walking south on the easterly sidewalk of Eighth

street, and some twenty-five feet from the most northerly track of the defendant he stopped to read some notice posted on a fence. After so doing, he claims that he looked both east and west and started to cross the track. He claims he saw no train from the east, but saw a switch engine pulling a string of cars on the south main track approach the. crossing so that he did not have time to cross ahead of it. He stopped about two feet north of the north rail of the north track, being the main west-bound track, to let the switch train pass by. As he was so standing, the smoke came down so heavy as the locomotive proceeded east that he could not see in that direction. He waited maybe thirty seconds or more, then walked south, and had crossed the west-bound track, but was not sufficiently far over to clear the pilot beam of a fast passenger train then coming in from the east, so that he was struck and thrown several feet out in the street and toward the cars of the switch train. It is the claim and contention of plaintiff that, as the switch train was pulling across Eighth street, the safety gates were open, thus giving plaintiff assurance that no other train was approaching, so that he had a right to rely thereon, especially since he, because of the smoke, was unable to see the oncoming passenger train.

The defendant contends that the case presents a situation where plaintiff's contributory negligence conclusively appears. Often has the law been announced that railroad crossings are of such impending great danger that one about to cross may not wholly rely on the invitation of flagmen or open gates to do so, but must use his senses to ascertain for himself the approach of trains. However, open gates are a matter to consider in determining the question of contributory negligence; for the pedestrian has a right to assume that the position of these is for the purpose of indicating to him presence or absence of danger, and also that the gateman perched in a tower is in a better position to notice approaching trains than is the pedestrian. But we have here this situation: That as to the switch train then pulling in upon the crossing plaintiff knew that the gateman failed to close the gate; that being so, the plaintiff had little, if any, right to rely on the open gates as an invitation to cross. Nor can it be said that he was lured into danger when the

switch engine with a string of cars attached was then effectually blocking the crossing. Plaintiff himself is forced to concede that he thought little of the position of the gates at the time, but looked for danger. He then assumed a position within a foot or two of the north rail of the west-bound track. There the smoke of the passing switch engine so enveloped him and his view to the east that he states he could not discover an approaching train by sight. He waited some thirty seconds or more, he states, but did not give the switch train time to pass. Then, without being yet able to look to the east on account of the smoke, he started across the track and was struck.

It is plain that had there been no gates or watchman, and had plaintiff then attempted to cross in the manner and under the condition existing as stated by him, he would have been guilty of contributory negligence under all the decisions, unless it may be said that the information obtained when he looked east before the smoke obscured his view was such that the ordinarily prudent person might have considered it safe to venture on the tracks.

May it be said that the open gates lured him on? We think not, for at no time upon the approach of the switch train, according to plaintiff's version, were they closed.

In the case of Flygen v. Chicago, M. & St. P. Ry. Co. 115 Minn. 197, 132 N. W. 10, the ordinance required the defendant to keep a gateman till midnight at a place where five tracks cross a street at an angle of about forty-five degrees. At ten o'clock in the evening plaintiff, in starting to cross, found the gates open and proceeded across. When he had crossed two or three tracks, he noticed the light of a train coming from the south. He stopped to let it pass, then went on, and was struck by a train which in the meantime had come up from the north and was hidden from view by the train just passing him. It was there held that it was a question for the jury whether he acted with ordinary care. We notice that, when Flygen started to cross, he saw no train approaching the crossing. The open gates were an indication to him that none was coming, but the situation was changed after he had partly crossed the tracks. Defendant's negligence placed him in a position of danger. In the

instant case plaintiff saw and knew that the crossing was occupied, and instead of waiting till the switch train pulled across, he leaves a safe place for a position of danger, aware that the smoke prevents him from seeing the approach of a train from the east.

In the case of Woehrle v. Minnesota Transfer Ry. Co. 82 Minn. 165, 84 N. W. 791, 52 L.R.A. 348, the Chief Justice states: "In such cases the raised gates or the absence of the flagman is an assurance to the traveler of safety, and an implied invitation to make the crossing, upon which he may to some extent, but not entirely, rely, and presume that it is safe for him to do so, and act upon the presumption, within reasonable limits."

Woehrle knew that a flagman was on the crossing when trains were approaching. The absence of such flagman lured him into danger. In the case of Stegner v. Chicago, M. & St. P. Ry. Co. 94 Minn. 166, 102 N. W. 205, Stegner was notified that the crossing, consisting of five tracks, was clear by the gates with the signal light on being up. The night was dark. When he had crossed some of the tracks, a train came suddenly in sight from the south; he stopped to let it pass; while so standing, his attention evidently directed to the passing train, an engine with the tender ahead and no light on backed down upon him. The facts are clearly different from the present case as to contributory negligence. It is not reasonable to say that the position of the gates in the present case either lured the plaintiff on, or could in any way be considered by him as an assurance that no trains from the east were approaching, because a train was then and there occupying the crossing.

It remains to consider whether, as an ordinarily prudent person, plaintiff was justified in relying on the information he obtained when he looked before the smoke obscured his view to the east. He states that as he walked past the tower and gate some twelve to eighteen feet he looked to the east and had a clear view of the defendant's track for about two or three blocks, but saw no train. He also testifies that this through passenger train was about on time; that he was well-acquainted with the running of trains, having had his livery barn just south of the tracks for some time; and that this train came in on the north track, the one he was crossing when struck;

and, further, that the usual speed of the train was from twenty-five to thirty miles per hour as it was approaching the crossing. The engineer testified that the usual speed was about forty miles per hour till some five hundred feet east of the crossing, when brakes were applied so that the proper stop could be made for the depot just west of Eighth street. It would seem that with plaintiff's knowledge of the time that this train was apt to come, its track, and its speed, the conclusion is irresistible that no ordinarily careful man, whose mind was at all directed to the danger of his position, would have taken any chances in stopping near the track for thirty or more seconds, and then without being able to ascertain whether the passenger train was coming or not, start across the track. Three blocks means about one-fifth of a mile. He states he knew this train came in at thirty miles per hour, and hence that it would take only about twenty-five seconds for the train to travel the distance which he, by observation, had found was clear of trains before the smoke obstructed his view. It seems to us that, in whatever aspect we consider the case, we are forced to the conclusion that as a matter of law it must be held that plaintiff was negligent.

Railroad crossings are places of imminent danger. Ponderous trains cannot be stopped suddenly. It is well understood that passenger trains stop only at designated places, and the speed is such that emergency stops are not free from great danger to the passengers thereon. Hence the salutary rule, that persons using railway crossings must exercise care and vigilance so as neither to risk injury to themselves nor others by taking chances on collisions, should not be relaxed.

Of course, in what has been stated above we have, as we must, taken the most favorable view of the testimony upon plaintiff's claim and theory of the case. The defendant's testimony tends to show that the gates were down; that plaintiff went to the middle of the street to get in between the ends thereof; that two men forty feet away on the depot platform called out to him that the train was coming; that the fireman and engineer had no difficulty in seeing plaintiff on account of smoke; that not only the bell was rung, but the danger whistle was blown, as soon as it was noticed that plaintiff was not

one of the switch train crew and was oblivious of his peril; and that all the means that could be taken were taken to avoid a collision. Plaintiff had no witness but himself as to the accident and one witness as to the speed of the passenger train.

Our conclusion is that the defendant is entitled to judgment in its favor, notwithstanding the verdict, and the order denying its motion therefor is reversed.