# LEON CAMPBELL v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

June 6, 1913.

Nos. 18,154—(140).

**Contributory negligence question for the jury — new trial.**

> The situation surrounding a collision between a team driven by plaintiff and a locomotive of the defendant upon a grade crossing tended to show that darkness had set in to a considerable degree; that snow was falling; that the wind blew toward the approaching locomotive, which was running then with steam shut off; that the headlight thereon was turned low; that no bell was rung; and that the plaintiff looked before he drove onto the tracks. *Held*, that the defendant was not entitled to a directed verdict on the ground that plaintiff's contributory negligence conclusively appears, nor does the evidence so strongly support that defense that the court erred in denying a new trial.

Action in the district court for Clay county to recover $2,995 for personal injury at a highway crossing of defendant's railway. The answer denied that the collision was caused by any negligence on the part of defendant's employees and alleged that the injuries were caused by plaintiff's negligence. The case was tried before Nye, J., who at the close of the testimony denied defendant's motion for a directed verdict on the ground of plaintiff's contributory negligence, and a jury which returned a verdict for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*C. W. Bunn* and *George Hoke*, for appellant.
*Charles S. Marden* and *W. B. Douglas*, for respondent.

HOLT, J.

Appeal by the defendant from an order denying its motion in the alternative for judgment or a new trial in a personal injury action.

On November 10, 1911, about half an hour after sundown, the

[1] Reported in 141 N. W. 855.

plaintiff with a team and buggy was driving south on a street or road in the outskirts of the city of Moorhead. One other person was in the buggy seated to the left of plaintiff. The defendant's line of railway with double tracks intersects this street at right angles, and runs in a straight line east to Dilworth station. The tracks at the crossing and for some distance to the east are upon an embankment varying from three to six feet high. As the plaintiff was thus approaching this grade crossing, with which he was entirely familiar, he claims that, as soon as the buildings which obstructed his view were passed, and this was about 90 feet from the north track, he looked to the east and continued so to do while the team walked to within 20 feet of the north track, but saw no train in that direction; that he then turned to look to the west and was so doing when struck by the defendant's train coming from the east. The plaintiff was seriously injured, his companion killed, so were both the horses, and the buggy entirely destroyed.

The only complaint upon this appeal is that the court below failed to give due consideration to plaintiff's contributory negligence. The defendant's contention is that the evidence either established the plaintiff's contributory negligence as a matter of law, or else is so manifestly in the defendant's favor on such issue that a new trial should be granted.

The evidence tended to show that it was quite dusk or dark, cloudy, snowing, and the wind blowing from the northwest. The train was one that carried the defendant's servants from the shops at Dilworth to Moorhead and Fargo every evening after the day's work was done. It consisted of two old passenger coaches, not lit except by the lanterns of the crew, and the locomotive, with the tender ahead. The train was drifting; that is, the steam was shut off as the crossing was approached. Hence little noise was made. It is admitted that no bell was rung. There is some evidence that the whistle blast signals to the tower men at a railroad crossing at about 1,400 feet and again about 900 feet from the street crossing were not heard by other persons substantially in as good position to hear as was plaintiff. The headlight, if lit at all, was according to the witnesses of defendant low and dim. The lamp wick had not been turned up

properly or else had been shaken down by the motion of the locomotive. About the moment of the accident, the fast mail with a powerful electric headlight was leaving Dilworth for Moorhead and its light could be plainly seen. Other lights were also lit there and at Moorhead. The plaintiff says that when he looked east he saw the lights at Dilworth and among them one that appeared larger than the others, but he judged it to be more than two miles away. The plaintiff testified that he continued to look toward the east while driving 60 to 70 feet, and when there was no obstruction to his view except such as the telegraph poles along the defendant's right of way, and the falling snow and increasing darkness interposed. He claims he neither saw nor heard the train. He then turned his eyes to the west to see if any train was coming from that direction, while the horses walked the remaining 20 feet to the track. If his testimony be true, he was alive to the danger of the crossing, but, although he took pains to ascertain if any train was approaching from either direction, he was unaware of this train bearing down upon him until the very moment of collision.

The defendant's main contention is that the evidence demonstrates the falsity of plaintiff's claim. That two witnesses upon whom the plaintiff depends as to the speed of the train necessarily saw it in order to so testify, and these witnesses were nearly 700 feet away from the tracks at the time. The defendant also produced witnesses who claimed to have been able then to see the train clearly more than 1,000 feet away. As the plaintiff's witnesses saw the train pass when they were nearly 700 feet away, it is argued that the plaintiff must have seen the train when he looked. Therefore his testimony is false when he says he saw no train, or else it is false when he says he looked. This argument holds good where there is daylight. But common experience bears out the statement that in semidarkness it is vastly more difficult to discover an object at a given distance coming directly toward you than it is to observe the same object at the same distance moving across the line of vision. Nor are the admitted facts of the defendant's failure to ring a bell and have the headlight burning in the customary manner to be laid out of the case in considering plaintiff's conduct. The fair inference from the description of the

headlight given by the defendant's servants and others is that it was so low and faint that it would not be taken for a locomotive light at all. This, as well as the failure to ring the bell, were matters likely to mislead. We think the plaintiff's position, the falling snow, the on-coming darkness, the direction of the wind, the drifting of the locomotive, the high speed, the negligence of the defendant as to the headlight and ringing of bell all bear upon plaintiff's conduct. And when these matters are considered, we are confident that the opinion of fair-minded men will not, by any means, be unanimous that plaintiff's failure to discover the approaching train was due to his carelessness. Knudson v. Great Northern Ry. Co. 114 Minn. 244, 130 N. W. 994. We also think that the evidence is not so manifestly in support of the defendant's contention that the plaintiff was guilty of contributory negligence that the defendant should have a new trial on that ground.

The case of Carlson v. Chicago & Northwestern Ry. Co. 96 Minn. 504, 105 N. W. 555, 4 L.R.A.(N.S.) 349, 112 Am. St. 655, presents a railroad crossing collision occurring in broad daylight. In Lang v. Northern Pac. Ry. Co. 118 Minn. 68, 136 N. W. 297, the accident was during daylight. It is true that the vision of the person injured was temporarily obscured by smoke from a passing train, but it there appeared that, this notwithstanding, he unnecessarily and knowingly placed himself in a perilous position. We do not regard either of these two decisions relied on by the defendant applicable to the facts here present.

Our conclusion is that the one issue of fact involved on this appeal remained with the jury; and the evidence sustains the verdict in that respect to such a degree that the trial court was justified in denying a new trial.

The order is affirmed.