## DANA H. JENKINS v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

January 23, 1914.

Nos. 18,345—(203).

**Negligence in regard to signals and lights — question for jury.**

1. Evidence in an action to recover damages for injuries sustained by the driver of a wagon in a railway crossing accident considered and *held* sufficient to take the case to the jury as to defendant's negligence with reference to warning signals, speed of the train, and necessity for lights thereon.

[1] Reported in 145 N. W. 40.

Note.—On the question of the failure to give customary signals as excusing nonperformance of duty to look and listen, see note in 3 L.R.A.(N.S.) 391.

**Contributory negligence.**

    2. Taking into account the time of the accident, obstructions to view, dark color of the unlighted train, with like background, and testimony with regard to failure to give warning signals of the train's approach, together with other circumstances disclosed, plaintiff could not be held guilty of contributory negligence as a matter of law, though he did not stop his team before attempting to cross.

**Same — burden of proof.**

    3. The burden of proof upon the issue of contributory negligence was controlled by the rule in this state, notwithstanding the accident occurred in another state.

**Reduced verdict not excessive.**

    4. Verdict as reduced by trial court sustained as against claim of excessiveness.

Action in the district court for Ramsey county to recover $75,000 for injury received at a highway crossing over defendant's railway. The answer alleged that, if plaintiff was injured by being struck by a train, his injuries were caused by his neglect to observe any care whatsoever and such negligence was the direct cause of any injury received. The case was tried before Johnson, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $30,316.67 in favor of plaintiff. From an order denying defendant's motion for judgment nothwithstanding the verdict or for a new trial, upon condition that plaintiff consented to a reduction of the verdict to $25,000, defendant appealed. Affirmed.

*W. H. Bremner* and *F. M. Miner,* for appellant.

*Samuel A. Anderson* and *A. F. Storey,* for respondent.

PHILIP E. BROWN, J.

Plaintiff had a verdict for $30,316.67, subsequently reduced to $25,000 in an action to recover damages resulting from a highway-crossing collision, alleged to have occurred through defendant's negligence in operating, at excessive speed and without giving warning signals of approach, a passenger train with no lights either on engine or in coaches. The case comes here on defendant's appeal from an order denying its motion for judgment or a new trial.

The accident occurred at Perry, Iowa, a city with upwards of

5,000 inhabitants, on October 5, 1912. Defendant's line passed through there in a northwesterly to southeasterly direction, crossing the streets at an angle of about 30 degrees. Its passenger station was located east of the main line, the south end projecting about 10 feet beyond the north line of Otley avenue, which ran east and west, and was crossed by two tracks east of the main line, and parallel thereto, at distances of about 50 and 175 feet, and known as the "house track" and the "electric light track," respectively. The station was about 100 feet in length, extending northerly, its west side being about 20 feet from the main track. There was a water-tank near the latter, on its east side, about 300 feet northwest of the north line of Otley avenue, and opposite this, 25 or 30 feet west of the main track, was a grain elevator building. In the evening of the day stated plaintiff drove a team attached to a wagon west about 300 feet along Otley avenue, crossed the house and electric light tracks, and passed south of the station to a point near the main line, when a passenger train some 255 feet or more in length, without light on engine or in cars, approached from the north, and the team jumped to the left and passed over the main track, but the wagon was struck by the engine and plaintiff injured.

1. Defendant claims the proofs failed to establish negligence on its part. Taking into account the location of the station and other obstructions to view situated east of the main line, it must be said that the crossing was a dangerous one, especially in case of neglect of duty with respect to warnings of trains approaching from the north. A whistle was blown at a point known as the "Wye," about one-half mile north of the station; but several attentive and apparently disinterested witnesses testified that none other was sounded, nor bell rung. As to speed, like witnesses estimated that the train was running from 15 to 20 miles an hour, while witnesses for defendant stated otherwise. The defendant's train crew, when testifying, gave no evidence as to speed. In the matter of absence of lights on the train, defendant insists the accident occurred very close to 6:15 o'clock p. m., and that it was not then dark enough to require lighting of the headlight or cars. But it appeared, among other things to be mentioned later, that another of defendant's engines in the yard

had its headlight burning at the time.  Upon this state of the record, all questions concerning signals, speed, and necessity for lights, were clearly for the jury.

2. Defendant's principal contention relates to contributory negligence.  While we have many cases dealing with this question, it is useless to attempt to fit the facts of this case to any of them. Facts rarely, if ever, are identical, and we have no case involving the precise circumstances disclosed.  However, certain principles have become settled in analogous cases, and if their application leads to the conclusion of plaintiff's negligence as a matter of law, he cannot recover.  Thus, a railway grade-crossing is a place of danger, and the track itself a warning.  It must be approached circumspectly by persons purposing to cross, and they are charged with notice of probability of approaching trains at all times.  If the crossing may properly be termed "dangerous," and they are familiar with the surroundings, additional care is required.  One about to drive a team across must look and listen for approaching trains, but need not necessarily halt when none are seen or heard.  Yet he must alertly use his sight and hearing to discern their approach, and special and peculiar circumstances may require a stop.  Beanstrom v. Northern Pac. R. Co. 46 Minn. 193, 48 N. W. 778.  Travelers may, within reasonable limits, act upon the assumption that due care will be exercised in management of trains and giving of crossing signals.  2 Dunnell, Minn. Dig. § 8192, and cases cited.  When the evidence conclusively shows the colliding train must have been visible from the point where the injured person claims to have looked and listened, a conclusive presumption arises either that he failed to look and listen, or else heedlessly disregarded the knowledge thus obtained and negligently encountered obvious danger.  Carlson v. Chicago & N. W. Ry. Co. 96 Minn. 504, 106 N. W. 555, 113 Am. St. 655, 4 L.R.A. (N.S.) 349.  In short, the care required must be commensurate with the danger to be apprehended, and whether such was used in a particular case is a question for the jury, unless the evidence is conclusive. Furthermore, this court is not disposed to reverse on the ground

of plaintiff's contributory negligence unless it clearly appears.
Schmidt v. Great Northern Ry. Co. 83 Minn. 105, 85 N. W. 935.

Plaintiff, driving standing, a team of young horses, of ordinary
gentleness and accustomed to cars, attached to an empty lumber-
wagon, turned into Otley avenue from an intersecting street at a
point some 300 feet from the station. Permanent structures entire-
ly prevented a view northward for a considerable space from the
point of turning. A short distance further on was the "electric light
track," with numerous cars extending about a block northerly. A
small building was located near the station, east of the "house track,"
and on the latter several cars were standing north of and parallel
with the station. The main track, running northerly from the
station, was straight. Plaintiff, therefore, had little, if any chance
to see a south-bound train, except in the space between the "electric
light track" and the small building, a distance of from 80 to 100
feet. He was 27 years old, with unimpaired faculties of sight and
hearing, and thoroughly familiar with the crossings and situation of
tracks with relation to streets and structures. When he turned into
Otley avenue his team was trotting. He saw a number of people
standing around the station, apparently waiting for a train. In the
yard to the south stood the engine with headlight, before mentioned.
At a point on the street approximately equidistant from the electric
and house tracks, plaintiff met an automobile, and claims to have
pulled his team down to a walk, after which he started up and pro-
ceeded, with one horse prancing, as usual, the other walking or at
a slow trot, also prancing, until almost immediately before the acci-
dent. He also claims that as he passed along the avenue he con-
tinually looked for trains from both north and south, but neither
saw nor heard any except the one with the headlight burning. The
exact time of the accident does not appear, but doubtless it was not
earlier than 6:15. The sun set at 5:52. A number of witnesses
at and near the station testified to seeing the train near the water
tank, but none from plaintiff's point of observation. Defendant
argues that it conclusively appears, both from the testimony and the
physical facts, that the team approached the crossing at a rapid gait;
that plaintiff did not look or listen; and that the light was sufficient

to enable him to see the train had be looked.   There was, however, persuasive evidence to the contrary, it appearing, among other things, that it was somewhat cloudy to the northwest, that some of those who observed the train, from points at or near the station, saw it but dimly, and plaintiff's testimony to the effect of driving slowly after passing the automobile being corroborated by disinterested bystanders.   After reading the record and examining photographs of the *locus in quo,* we are by no means assured that, if plaintiff had looked continuously to the north while on Otley avenue, he would have seen the train.   Taking into account the time, obstructions to view, the dark color of the unlighted train, with like background, its oblique approach, and, as the jury might have found, absence of warning signals, the train might reasonably have escaped plaintiff's notice. Nor can it be held as a matter of law that plaintiff should have stopped his team before attempting to cross.   Upon the whole record we think the question of contributory negligence was for the jury. See Campbell v. Northern Pac. Ry. Co. 122 Minn. 102, 141 N. W. 855.

3. Error is assigned because the court charged that defendant had the burden of proving contributory negligence.   Such is claimed to be contrary to the law of Iowa, where the accident occurred.   This, however, was not pleaded.   Furthermore, burden of proof pertains to the remedy, and is controlled by the rule in this state.   Jones v. Chicago, St. P. M. & O. Ry. Co. 80 Minn. 488, 83 N. W. 446, 49 L.R.A. 640.   See also Kaufman v. Barbour, 98 Minn. 158, 159, 107 N. W. 1128; Fryklund v. Great Northern Ry. Co. 101 Minn. 37, 39, 111 N. W. 727.

4. Excessiveness of damages is claimed.   Plaintiff suffered loss of his right arm and leg, several teeth, and minor hurts; but fully recovered his general health.   For several years prior to the accident he had worked as a farm-hand for $420 a year, and board, lodging and laundry work.   We find no ground for interfering with the verdict as reduced.

Order affirmed.