# ANNA LAWLER v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

June 4, 1915.

Nos. 19,271—(158).

**Railway — high speed at village crossing — question of negligence.**

1. Whether the operation of a train of cars at a high and dangerous rate of speed through a country village and over and across the streets thereof, irrespective of statute or ordinance regulating the speed of such trains, is an act of negligence, will depend upon the facts of the particular case; the presence or absence of fixed crossing signals; the population of the village; the extent of the use of the streets crossing the railroad track, and other facts throwing light upon the question, and ordinarily will present an issue for the jury.

**Same — question for jury.**

2. The question was properly submitted to the jury in this case.

**Verdict sustained by evidence.**

3. Evidence *held* to support the verdict finding negligence on the part of defendant in operating a train through the village of Watkins at a high and dangerous rate of speed, and also in not giving the usual signals of the approach of the train.

**Contributory negligence.**

4. Decedent, who was killed by such train at a street crossing, was not guilty of contributory negligence as a matter of law. The distracting circumstances disclosed by the evidence made the issue one of fact.

**Damages not excessive.**

5. The damages are not excessive, and the record presents no reversible error.

[1] Reported in 152 N. W. 882.

Note.—The authorities passing upon the duty of a traveler approaching a railroad crossing as to place and direction of observation are presented in a note in 37 L.R.A.(N.S.) 135.

As to failure to give customary signals as excusing nonperformance of duty to look and listen, see note in 3 L.R.A.(N.S.) 391.

Action by the administratrix of the estate of John W. Lawler, deceased, in the district court for Stearns county to recover $7,500 for the death of her intestate at a highway crossing over defendant's railroad, and $500 for property destroyed. The case was tried before Roeser, J., who denied defendant's motion to dismiss the action, and a jury which returned a verdict for $7,900. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*John L. Erdall, A. H. Bright* and *James R. Bennett, Jr.,* for appellant.

*R. B. Brower,* for respondent.

Brown, C. J.

Plaintiff's intestate, her husband, was killed while crossing the tracks of defendant, as such tracks extend over a public street in the village of Watkins, this state, and this action was brought to recover for such death, upon the ground that it was caused by the negligence of defendant. Plaintiff had a verdict, and defendant appealed from the judgment rendered thereon, having first moved in the alternative for judgment notwithstanding the verdict or a new trial, which motion was denied.

Decedent resided with his family some four miles from the village of Watkins; was a farmer by occupation. On the day of his death, January 16, 1914, he came into the village with a team of horses to do some trading and to market a small quantity of grain at the village elevator. His wife was with him. They entered the village from the south and proceeded to the north up Central Avenue, the principal street of the village, to the postoffice, where his wife left the wagon and entered the office to mail some letters. Decedent drove the team on, intending to cross the railroad track to an elevator on the opposite side. As he reached and was partly on the railroad track, he was struck and killed by a passing train. The negligence charged in the complaint, so far as here material, was that defendant failed to give any warning of the approach of the train, by sounding the whistle or ringing the bell of the engine, or

otherwise, and that the train was being run through the village at a reckless and dangerous rate of speed. The answer put in issue the negligence so alleged, and the issues thus raised were submitted to the jury.

Defendant contends that in so submitting such issues the court erred: (1) Because the evidence is insufficient to justify the conclusion that the usual signals were not given; and (2) that the question whether the train was running at an excessive and dangerous rate of speed was not a proper issue for the jury, and in no event was the high speed of the train the proximate cause of the death of decedent.

1. The case in respect to the question whether the evidence warrants the conclusion that the usual train signals were given, is not unlike numerous prior cases, involving the same issue, wherein the contention here made was not sustained. The evidence is conflicting. The trainmen testified that the usual signals were given at the usual place, and several witnesses, residents of the village, testified that they heard the sound of the engine whistle as it approached the village. On the other hand, several witnesses testified that they heard no such signals, and one of them further testified that he was watching the train from about the time it came into view until it collided with decedent's team, and he was quite clear that the signals were not given. Another witness with equal opportunity of observation gave evidence to the same effect. This evidence made the issue one of fact. Cotton v. Willmar & Sioux Falls Ry. Co. 99 Minn. 366, 109 N. W. 835, 8 L.R.A.(N.S.) 643, 116 Am. St. 422, 9 Ann. Cas. 935. The evidence in the case at bar is much stronger in support of the claim that the signals were not given, than in the Cotton case, which we have consistently followed in later cases.

2. We think also, and so hold, that the question whether it was negligence on the part of defendant to run this train through the village at a speed of between 50 and 60 miles an hour was properly submitted to the jury.

Defendant's track extends through the village nearly due east and west. The village has a population of about 700 people. The prin-

cipal business part of the town is located on the south side of the track; but elevators and stockyards and many homes are upon the north side. Central avenue, upon which decedent was driving his team when he met his death, runs north and south, or practically so, and is the principal street of the village. It is used extensively by the citizens passing from one part of the village to the other. There is some conflict in the evidence as to the speed of the train, the same being estimated all the way from 48 to 60 miles an hour; the engineer put the speed at about 48 miles an hour. The court properly left it to the jury to find the approximate speed of the train. It further appears that defendant maintained no gates at this crossing, nor a flagman to warn pedestrians of the approach of trains, nor any crossing bell, often found at crossings of this kind. In this situation there would seem, within our decisions, no particular difficulty in holding that the question whether the operation of the train over the crossing at a high and dangerous rate of speed was an act of negligence on the part of defendant, was one of fact. That it is highly dangerous to persons making use of the street cannot well be questioned, and the least that may be said is that the issue, including the question of proximate cause, should, on facts like those presented in the case at bar, be sent to the jury. Howard v. St. Paul, M. & M. Ry. Co. 32 Minn. 214, 20 N. W. 93; Bolinger v. St. Paul & D. R. Co. 36 Minn. 418, 31 N. W. 856, 1 Am. St. 680; Lammers v. Great Northern Ry. Co. 82 Minn. 120, 84 N. W. 728. It is true that defendant was not required by statute to station a flagman at this crossing, or required to maintain gates or a signal bell, in view of which it is probable that its failure to do so does not constitute actionable negligence. But those warning precautions could have been provided, and their absence is an element proper for consideration in determining the question whether it is negligence to run a train through such a village at a high and dangerous speed, imperiling, as it may, the lives of citizens making use of the street over which the train passes.

3. It is further contended that decedent was guilty of contributory negligence, in that he failed to look and listen for the approach-

ing train before attempting to cross the railroad track, and that no recovery can therefore be had. In this we do not concur.

The point where decedent stopped his team to permit his wife to go to the postoffice to mail some letters was about 220 feet from the main track of defendant's road. In proceeding to the crossing, decedent passed over a street running parallel with the railroad. Upon getting out into that street the view of the track to the east, from which the train came, was unobstructed for a distance of something like 3,000 feet, and, had decedent looked to the east at that time, he probably would have seen the oncoming train. There is no evidence that he then looked, but it cannot be said as a matter of law that he was guilty of contributory negligence in failing to do so, for he was at that time about 200 feet from the track. The time to look for trains before crossing a railroad track is when the pedestrian is by near proximity reminded of the danger confronting him, namely, the presence of the track and likelihood of passing trains, and whether decedent was in duty bound to look to the east at the point stated was a fair question for the jury. After passing over this parallel street the view to the east was obstructed by two buildings on the right-hand side of the street upon which decedent was driving his team, and these obstructions continued until decedent was within about 100 feet of the track. At this point his view was clear for a long distance to the east, except as it may have been obstructed by a line of telephone poles, which was not such as to prevent seeing the train had decedent looked. There is no evidence that he looked after passing the buildings referred to, and, if the case rested here, decedent's contributory negligence would seem reasonably clear. But the case does not end at this point. Other facts, clearly presented by the evidence, disclosed distracting circumstances sufficient to require a submission of the issue to the jury. It appears that the day was cloudy and dark, with some occasional flurries of snow. A freight train had arrived at the station some time prior to the accident, and the trainmen in charge thereof had been engaged in some switching operations in the yard. This was noticed by plaintiff as she and her husband came up Central avenue to the postoffice. She testified that cars were being moved back and

forth over the track adjoining that on which the fast passenger train passed through the village. A strong northwest wind was blowing practically against the approaching train, thus preventing the rumbling sound to be heard any particular distance. When decedent started to cross the track the engine engaged in the switching operations was at the station building, a short distance west of the crossing. The smoke and steam therefrom was being carried by the wind down toward decedent and in the direction from which the passenger train was approaching. Decedent's attention was undoubtedly attracted by this engine, for it was to him the only apparent obstacle to a free passage over the tracks. In fact one witness who saw the approaching train, and was observing the movements of decedent as he neared the track, testified that decedent was looking directly at the engine at the station. From this the jury were justified in concluding that decedent was unaware of the oncoming passenger train, and was intent on avoiding danger from the freight engine which was or had been moving about on the adjoining track in switching operations. Decedent is presumed to have exercised care for his safety and the presence of this engine, coupled with the smoke and steam therefrom, which was brought toward decedent and the passenger train by the wind, and which necessarily left the movements of that engine in some doubt, constituted distracting circumstances sufficient for the consideration of the jury. Loucks v. Chicago, M. & St. P. Ry. Co. 31 Minn. 526, 18 N. W. 651; Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166, 70 Am. St. 341. It was only a matter of seconds after decedent left the last building on his approach to the track before he was struck and killed, the strong wind blowing against the passenger train necessarily prevented the sound or noise attending its rapid movement over the track from reaching him, and he was justified, in fact required, to take notice of and avoid a possible danger which was open to his view, namely, the engine which was or had been switching over the crossing. The case in this respect comes within that of Brown v. Chicago & N. W. Ry. Co. 129 Minn. 347, 152 N. W. 729, where a substantially similar situation was presented. In fact the evidence in this case presents a clearer ground for re-

covery than in the Brown case. The evidence of the precise location of the freight engine, and its movements, as well as to the steam and smoke therefrom, is conflicting, presenting issues of fact for the jury. It precludes a holding by this court of contributory negligence as a matter of law. Simonson v. Minneapolis, St. P. & S. S. Marie Ry. Co. 117 Minn. 243, 135 N. W. 745; Campbell v. Northern Pacific Ry. Co. 122 Minn. 102, 141 N. W. 855.

4. We have carefully examined the assignments of error made the basis for the motion for a new trial, and find therein no sufficient reason for interference. The damages awarded by the jury, $7,500, are not excessive. Decedent was 51 years of age, and resided upon a farm recently purchased by him which was encumbered in the sum of $4,600. He left surviving him a wife, one son and one daughter. The daughter was married and lived with her husband. The son was 22 years of age and resided at the farm home. While the jury gave the full amount permitted by statute, we are not prepared to say that it was excessive. The case of Boos v. Minneapolis, St. P. & S. S. Marie Ry. Co. 127 Minn. 381, 149 N. W. 660, is clearly distinguishable in its facts.

Judgment affirmed.