## PER ENGSTROM AS ADMINISTRATOR, ETC. v. CANADIAN NORTHERN RAILWAY COMPANY AND ANOTHER. CANADIAN NORTHERN RAILWAY COMPANY, APPELLANT.[1]

No. 22,888.

July 21, 1922.

**Decedent guilty of contributory negligence at railroad crossing.**

The evidence showed that plaintiff's intestate, in attempting to cross a railroad track, was struck by a cattle car, which was being switched; that, after he reached a point in the street about 40 feet from the track, he had an unobstructed view of the track for a considerable distance; that there was a brakeman at the crossing who signaled him to stop. *Held* that he was guilty of contributory negligence as a matter of law and that plaintiff is not entitled to recover.

October 6, 1922.

**Questions for the jury.**

Question of defendant's negligence and that of decedent were for the jury. [Reporter.]

Action in the district court for Roseau county by the administrator of the estate of Nels Engstrom, deceased, to recover $3,000 for the death of his intestate and destruction of an automobile. The case was tried before Watts, J., who when plaintiff rested denied defendants' motion to dismiss the action and at the close of the testimony the motion of the Canadian Northern Railway Company for

[1]Reported in 189 N. W. 580, 190 N. W. 68.

a directed verdict, dismissed the action as to the Minnesota & Manitoba Railway Company, and a jury which returned a verdict for $550. Defendant's motion for judgment notwithstanding the verdict was denied. From the judgment entered pursuant to the order for judgment, Canadian Northern Railway Company appealed. Affirmed after reargument.

*Hector Baxter, Bert Hanson* and *Brown & Guesmer*, for appellant.

*Alexander Fosmark* and *F. A. Grady*, for respondent.

July 21, 1922.

QUINN, J.

Action to recover for the death, by wrongful act, of respondent's intestate, Nels Engstrom, and for damages to his automobile. At the close of the testimony, appellant's motion for a directed verdict was denied. The jury returned a verdict for damages to the automobile, but awarded nothing on account of the death of respondent's intestate. From a judgment entered upon the verdict for damages to the automobile, this appeal was taken.

Defendants' track extends north and south through the village of Warroad, and Lake street crosses it at right angles. There is a gradual rise of about 3 or 4 feet in the street as the track is approached from the west. The view to the north and south is unobstructed from this grade, so that a train can be seen in either direction for a considerable distance.

Mary Moody testified on behalf of the plaintiff that she was in the rear seat of the Engstrom auto and that, after crossing the bridge, it turned east on Lake street; that as they were approaching the crossing Engstrom stopped the car and asked her where she wanted to get off, then started ahead slowly; that as they started she observed a string of cars and a locomotive upon the track; that as the auto reached the rise in the street she saw the brakeman hanging on the northwest corner of the car that struck the auto and that he hallooed at them; that as the auto approached the track it turned to the north, and the corner of a stock car struck it, causing the damage complained of; and that the bell did not ring and the whistle did not sound. There was other testimony that the bell did not ring and the whistle was not sounded.

The witness O'Donnell testified that he was brakeman on the train; that they were switching at the time in question; that he was at the crossing at the time; that two automobiles stopped on the west side of the track; that as the train pulled south across the street he signaled the drivers of the autos to cross the track, which they did; that he then signaled the train to stop and looked in both directions to see if there was any traffic approaching and saw none; that he then signaled the engineer to back up over the crossing, which he proceeded to do; that he then saw an automobile about 150 feet to the west, which proved to be the car Engstrom was driving; that he signaled the driver to stop, and, as the auto reached the rise in the street, he waived and hallooed for him to stop, but he did not heed the warning; that, as the auto came up the grade, he gave the engineer the "wash-out," a short stop signal, and continued to signal and halloo at the auto driver to stop; that the engineer gave three short blasts of the whistle and proceeded to stop the train; that the auto, as it reached the track, swerved to the north and was struck by the corner of the cattle car and completely demolished, Engstrom and the man by his side killed, and Mrs. Moody injured. O'Donnell's testimony was corroborated in the main by several other witnesses.

It is plain from a reading of the record that the train was in clear view of the driver of the auto while it was ascending the grade in the street for some 30 or 40 feet before reaching the track, that his auto was going at less than 8 miles an hour, and that he could have stopped it within a very few feet. There is no testimony in the record to support the claim that the Engstrom car was at the crossing when the brakeman signaled the first two autos to cross the track. There is no proof but that O'Donnell was at the crossing at the fatal time. It is conceded that he was there only a few moments before when he signaled the two autos across, and the drivers of those vehicles corroborate O'Donnell's testimony in that respect.

We are unable to conceive of anything more that a flagman or a gate could do to warn the driver of the dangerous situation than the brakeman did. We know of no presumption that could overcome the undisputed situation. The jury based its finding of negligence squarely upon the fact that there was no gate or flagman stationed

at the crossing. It returned a statement with the verdict to the effect that defendant was negligent in no other respect.

As stated in the case of Lang v. Northern Pacific Ry. Co. 118 Minn. 68, 136 N. W. 297, railroad crossings are places of such impending danger that one about to cross may not wholly rely upon the invitation of a flagman, but must use his own senses to ascertain the approach of trains. Four witnesses other than the brakeman testified as to his waving and shouting. Mrs. Stone testified that she was upon the north walk to the west of the crossing immediately before the accident, that she crossed the track and then went over to the south walk on the east side, when she heard the shouting, looked back, saw the auto coming up the rise, heard three blasts of the whistle and the bell ring, and then saw the impact. The witnesses Hoyez and Wietmeier testified that they approached the crossing from the west a few minutes before the accident; that, as the train pulled across the street to the south, there was a brakeman hanging on the rear car and another at the crossing; that the latter gave them a signal to cross the track, which they did; that they drove east about a block and stopped when the accident occurred.

The record discloses that the jury found that defendant was negligent in not having a flagman, gates or other appliances at the crossing to warn travelers of danger, but that it was negligent in no other way that contributed to the accident. The presumption that deceased used due care is destroyed when it appears that if he had looked and listened he must have known of the danger. We cannot escape the conclusion that deceased contributed to the accident and that he was guilty of contributory negligence as a matter of law.

Reversed.

DIBELL, J. (dissenting.)

I dissent.

The jury might have found facts about as follows:

The train of 17 cars was headed south and the crew were switching cars from the south across Lake street. They kicked two across and the train then went south until the cars cleared the street, the engine then being some 600 feet further south. Leo Hoyez came

in his auto on Lake street from the west while the switching was going on and stopped perhaps 40 feet west of the track. Behind him came Earl Wietmeier in his auto. He stopped behind Hoyez. Frank H. Brown, the cashier of the bank, rode with Wietmeier and got off, without the auto stopping, some 225 of 250 feet west of the track in front of the Martin Lumber Company office. As he got off he saw the Engstrom car coming from the west a few hundred feet away, perhaps 300 or 400 feet. Wietmeier, while behind Hoyez, both awaiting an opportunity to cross, heard an auto approach from the west and stop behind him without shutting off the engine. He did not look back. The brakeman at the crossing signaled to cross and Hoyez and Wietmeier crossed in safety. Hoyez stopped at the bank, some 350 feet east of the railroad track, and when he looked back the accident was just occurring. Wietmeier went to the Warroad Mercantile Company store some 125 feet further on. When he got out the train had stopped and the accident had happened. By an experiment made afterwards Hoyez fixes the likely time taken in getting from where he started west of the track to the bank at 30 seconds. Very soon after Brown went into the lumber office, almost immediately, his attention was attracted to the crossing and he saw Engstrom approach it. The cars were not then moving. The jury might find from the testimony of Hoyez and Wietmeier and Brown that the three cars were in close proximity at the railroad crossing. They could find that Engstrom saw the signal upon which Hoyez and Wietmeier acted and started to cross in reliance upon it, and was on his way when Brown saw him.

Under such facts the case is not a look-and-listen case such as Anderson v. Great Northern Ry. Co. 147 Minn. 118, 179 N. W. 687, cited by the defendant. To some reasonable extent Engstrom might rely upon the action of the two autos in crossing in front of him. Brown v. Chicago & Northwestern Ry. Co. 129 Minn. 347, 152 N. W. 729. It is evident that the train commenced backing when the auto was very near the track. If Engstrom started to cross in reliance upon a signal, or followed close after Hoyez and Wietmeier while the train was standing, it cannot be held as a matter of law that he was negligent.

I readily concede that a different view of the evidence might be taken, for this recited is not all; but it seems to me that the one suggested might well enough be taken and to my mind it is likely the true view. That evidence is in the case and along with the other evidence was for the jury. The witnesses throughout, so far as the record shows, were candid. There was excitement. Looking at the same things they did not see alike. Their attention was attracted to one thing within their scope of vision and other things there made no impression upon their minds. Everything happened within the limits of a few seconds. Their estimates of time and changing distances as the different occurrences happened are likely inaccurate. The cars may have started when Engstrom was close to the track, and he may have become excited, and he may not have done the most prudent thing; but if he was not in a place of peril through his negligence, but through the negligence of the defendant, the law does not require of him the safest action.

The appeal is from the judgment entered after the denial of the motion for judgment notwithstanding the verdict. There was no motion for a new trial. The only question is whether the evidence is conclusive against the verdict. National Cash Register Co. v. Merrigan, 148 Minn. 270, 181 N. W. 585. This is the effect of the reversal. I dissent upon the ground that the question was for the jury.

In October 6, 1922, the following opinion was filed:

PER CURIAM.

1. A reargument was granted and the case was resubmitted on oral arguments. Upon a renewed consideration a majority of the court are of the opinion that the case was for the jury upon the question whether there was negligence of the defendant proximately causing the death of the decedent in failing to maintain gates or a flagman or other appliance to warn travelers at the crossing, and that the question of the contributory negligence of the deceased was for the jury.

2. The order of reversal is set aside and the judgment from which the appeal taken stands affirmed.

Judgment affirmed.

QUINN, J. (dissenting.)

I dissent. This cause received careful examination on the former submission; the same not having been orally presented by counsel for appellant, the record was read with special care and the result stated in the opinion was the deliberate judgment of the court. A reargument in my opinion tends only to demonstrate and confirm the correctness of the former opinion, and from a reversal thereof I respectfully dissent.

BROWN, C. J. (dissenting.)

I concur in dissent:

The facts in this case as disclosed by the record and clearly stated in the opinion of Mr. Justice Quinn present to my mind a flagrant instance of an automobile operator, with the situation plainly before him, attempting to "beat the train," with fatal results. One fortunate thing about the case, however, is that decedent left no widow or children to suffer from his untimely act, and the jury reported no damages in that behalf. Yet the jury evidently did conclude, all things considered, that the railroad company would be willing to pay for the automobile, and a verdict for its approximate value was returned. In this there was manifest error. The former decision so holding was right and should be adhered to.