## ARTHUR MARTIN v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 14, 1916.

Nos. 19,532—(177).

**Contributory negligence.**

> It conclusively appeared from the evidence in this case that plaintiff
> was guilty of contributory negligence.

Action in the district court for Hennepin county to recover $15,000
for injury received while crossing defendant's tracks. The case was
tried before Dickinson, J., who at the close of the testimony granted
defendant's motion for a directed verdict. From an order denying his
motion for a new trial, plaintiff appealed. Affirmed.

*Belden & Safford,* for appellant.

*M. L. Countryman, Cobb, Wheelwright & Dille* and *C. M. Bracelen,*
for respondent.

BUNN, J.

A verdict for defendant was directed in this case, and plaintiff appeals
from an order denying his motion for a new trial. The only question
is whether the trial court was right in holding that plaintiff was guilty
of contributory negligence as a matter of law.

Plaintiff, a young man 29 years of age, at about 8:30 o'clock on the
evening of November 25, 1914, was walking with his mother in a
westerly direction on the left-hand side of Lowry avenue, N. E., in
Minneapolis. Defendant's tracks cross Lowry avenue at grade near the
intersection of that avenue with Seventh street, N. E., as do two tracks

[1] Reported in 155 N. W. 1047.

---

Note.—For duty of traveler approaching railroad crossing as to place
and direction of observation, see note in 37 L.R.A.(N.S.) 136.

of the Northern Pacific Company. Plaintiff, before he reached the first tracks, which were those of the Northern Pacific Company, saw that the crossing gates were raised. He frankly admits, however, that this was no assurance of safety, as he knew that the gates were not operated after seven o'clock p. m. Plaintiff testified that he looked both ways, saw no trains, and then proceeded west across the Northern Pacific tracks; that he then looked to the left and observed some loaded coal cars on the easterly or first of defendant's tracks about a car length from the street line; that he then looked to the right, and saw no train, though he says there was something that obstructed his view in that direction. Plaintiff then crossed the 35-foot space between the nearest rails of the second Northern Pacific track and the first of defendant's tracks, crossed this track, and reached the main west-bound track of defendant, where he looked again to the left and saw a train almost upon him; it was too late to avoid it, and he was struck, receiving the injuries for which he seeks to recover in this action.

It was a dark night, but not cold or windy. The tracks were straight and level. The train was a heavy freight, the engine was one of the big road engines and carried a brilliant and powerful headlight. Plaintiff testified that he listened for signals, and neither heard nor saw the train until immediately before he was struck. The evidence that he did not hear the approaching train is difficult to believe, but we pass that. If the loaded coal cars on the side-track obscured his view to some extent before he crossed that track, that was an added reason for looking again to the left before approaching the west-bound main, and, had he done so, it seems inconceivable that plaintiff would not have seen the headlight and identified it. There was nothing to obstruct his view, no snow or smoke in the air, no other lights to confuse him, no other trains to distract his attention. The safety gates are admittedly out of the case as an excuse for plaintiff's conduct. Plaintiff relies on the evidence that, after crossing the Northern Pacific tracks, he continued to look to the right until his view was unobstructed, then looked to the left, but too late to escape being struck. As to this fact, it does not appear that his view to the right disclosed any obstructions that justified his continued attention to the situation in that direction; it disclosed no approaching train, and we see no reason for plaintiff not turning to look to the left before he did. It

is claimed that an arc light at the crossing interfered with seeing the headlight on the engine, and that the headlight was not focused to flood the right of way. It is after giving all due weight to the evidence on this matter of the headlight, that we say that it seems inconceivable that plaintiff could not have plainly seen it had he looked to the left at almost any time after crossing the Northern Pacific tracks. We are unable to consider the presence of his mother a distracting circumstance, or to hold that any particular emergency confronted plaintiff. There was danger, as there always is in crossing railroad tracks at grade, especially where there are several tracks near together, but the danger was a known one, and ordinary care would have obviated it. And we do not regard as at all helpful to plaintiff the fact that four boys passed him and his mother on a run when the latter were 40 feet from the track on which the train was coming; these boys had seen the train when they were a block away from the crossing, and decided to run and cross ahead of it, their testimony was that the train was two or three blocks away when they first saw it, and about 200 feet away when they crossed on the run ahead of it. These boys seem to have had no difficulty in seeing the train; their evidence is decidedly inconsistent with the claim of excessive speed made by plaintiff, and, if they were noticed at all by plaintiff, their crossing ahead of him in evident haste was hardly an assurance of safety, or a distracting circumstance.

The cases which plaintiff relies on to sustain his claim that the case was for the jury are all quite clearly distinguishable. Those closest in their facts to the present case and most relied on are Stegner v. Chicago, M. & St. P. Ry. Co. 94 Minn. 166, 102 N. W. 205, and Flygen v. Chicago, M. & St. P. Ry. Co. 115 Minn. 197, 132 N. W. 10. In the Stegner case plaintiff was entitled to rely upon the raised safety gates as an assurance of safety, and his attention was distracted by a train coming from the opposite direction. In the Flygen case the same assurance and distracting circumstances were present. In each of the other cases cited by plaintiff there was present either the element of an assurance of safety, or the element of distracting circumstances or some like facts that it was considered would justify a jury in not finding contributory negligence. Many of them were death cases in which we applied the strong presumption rule, many were cases of drivers of vehicles. Brown v.

Chicago & N. W. Ry. Co. 129 Minn. 347, 152 N. W. 729, was a death case, and it was held by a majority of the court that the distracting circumstances of another approaching train and men on horseback passing over the crossing in safety, aided by the presumption of due care on the part of deceased, made the question one of fact. Lawler v. Minneapolis, St. P. & S. S. M. Ry. Co. 129 Minn. 506, 152 N. W. 882, was another death case. A strong wind blowing against the approaching train necessarily prevented the noise attending its movement from reaching him, and his attention was directed to an engine which was or had been switching over the crossing, a danger that was open to his view. It would not be helpful to review in detail the other authorities relied on by plaintiff. The present case is in its facts like Carney v. Chicago, St. P. M. & O. Ry. Co. 46 Minn. 220, 48 N. W. 912; Clark v. Northern Pac. R. Co. 47 Minn. 380, 50 N. W. 365; Schneider v. Northern Pacific Ry. Co. 81 Minn. 383, 84 N. W. 124; Olson v. Northern Pacific Ry. Co. 84 Minn. 258, 87 N. W. 843.

We are compelled to hold that plaintiff was guilty of contributory negligence as a matter of law, and that the verdict was rightly directed.

Order affirmed.