## W. R. VASEY v. JACOB SAARI AND ANOTHER.[1]

### November 22, 1918.

### No. 20,954.

**Contract — construction of unambiguous writings for the court.**

1. Where negotiations are conducted wholly by letters and telegrams and these are unambiguous, it devolves upon the court to determine their effect.

**New trial — question improperly submitted to jury.**

2. Where the verdict may have been based upon an issue erroneously submitted to the jury, there must be a new trial unless it conclusively appears that the prevailing party was entitled to the verdict upon other grounds.

Action in the district court for St. Louis county against the persons doing business under the firm name of Saari Brothers to recover a balance of $491 due upon a contract. The answer alleged that defendants had paid plaintiffs in full. The case was tried before Hughes, J., who when plaintiff rested denied defendants' motion to dismiss the action, and at the close of the testimony denied their motion for a directed verdict, and a jury which returned a verdict for $531.84. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*Larson & Marsch,* for appellants.

*John H. Norton,* for respondent.

[1] Reported in 169 N. W. 478.

TAYLOR, C.

Defendants were engaged in logging in St. Louis county during the winter of 1915 and 1916 and hired three carloads of horses from H. C. Weinstock of Eau Claire, Wisconsin, for use in their logging operations. Most of these horses belonged to third parties and not to Weinstock, but this fact was not disclosed to defendants until after they had contracted with Weinstock for the horses and he had delivered them. Twelve of these horses, six teams, belonged to W. R. Vasey and J. E. Vasey and had been procured by Weinstock under a written contract made January 4, 1916, which he had assumed to execute in the name of defendants as their agent and in which he recited that his authority to make it was given in a telegram of December 10, 1915. When the time for settlement arrived at the end of the logging season, defendants claimed the right to settle with Weinstock for all the horses whether owned by him or not as they had all been furnished by him and under the contract made with him. Defendants also claimed a reduction from the contract price for the Vasey horses on the ground that they were too light for the work and had been of little use. The Vaseys refused to allow the reduction. Thereafter W. R. Vasey acquired the interest of J. E. Vasey in the claim, and brought this suit to recover the compensation provided for in the contract of January 4, 1916, executed in the name of defendants by Weinstock. At the trial only two issues were submitted to the jury: Whether defendants had authorized Weinstock to make the contract of January 4 as their agent; and, if not, whether they had subsequently ratified that contract. The court eliminated from the case the claim of a settlement with Weinstock; and, the amount due by the terms of the contract being undisputed, directed the jury to return a verdict for the amount claimed if they found either of the above issues in plaintiff's favor. The jury found for plaintiff. Defendants moved for judgment notwithstanding the verdict or for a new trial and appealed from the order denying their motion.

Defendants contend that there is no evidence tending to show that Weinstock was ever their agent or ever had authority to make the contract of January 4 on their behalf, and that the court erred in submitting that question to the jury.

Defendants and Weinstock were strangers to each other and the negotiations between them were wholly by means of letters and telegrams. These negotiations were begun by Weinstock who on December 3, 1915, wrote defendants: "I was informed that you wanted to hire some horses for logging, if so I could furnish you with a carload weighing from fifteen (1500) up. State wages & condition that you want them & would be glad to hire them to you." On December 5 defendants answered: "Replying to yours of December 3rd, you may expect to hear from us in a few days if we will need additional horses for our operations this winter." On December 9 Weinstock wired: "Please state wages for teams and fare both ways and will you insure them other than the wear and tear? Let us know at once and can ship Sunday night." On December 10 defendants wired: "Will pay $30.00 per month for each team from date of their arrival until reloaded on cars for return shipment and pay freight both ways. Stock must be good. If we permanently disable or kill horse we will pay for it. If above is satisfactory, ship stock Sunday night. Answer." Weinstock shipped the horses. On December 23 defendants wrote Weinstock that they could use eight more teams and asked if he could furnish them immediately. He shipped them. On January 4, 1916, Weinstock wired that he had eight teams which he could ship if defendants wanted them, and on January 5 defendants wired to ship them. The horses in controversy were in this last shipment.

When Weinstock made the contract with the Vaseys on January 4, 1916, he had no unfilled orders from defendants for horses, and his offer to furnish the eight additional teams had not then been accepted. In that contract he referred to the telegram of December 10, 1915, quoted in full above, as constituting his authority for making it; but all the horses contemplated in that telegram had been furnished in December. Furthermore the correspondence shows clearly that defendants were dealing with Weinstock himself as the party from whom they were hiring the horses, and furnishes no basis for an inference that they had employed him as an agent to hire horses for them from third parties. The communications between them being wholly in writing and unambiguous, the duty devolved upon the court to determine their legal effect, and

it was error to submit that question to the jury. The court should have ruled as a matter of law that Weinstock was not the agent of defendants and had no authority to bind them by the contract which he assumed to make as such agent.

The evidence is sufficient to support a finding that, soon after the horses in controversy had been received, defendants were informed that they belonged to the Vaseys and of the contract made by Weinstock, and the issue as to whether defendants had ratified this contract was properly submitted to the jury; but, as the jury may have based their verdict upon the ground erroneously submitted to them, there must be a new trial unless it conclusively appears that plaintiff is entitled to the amount allowed. 2 Dunnell, Minn. Dig. § 7168.

Upon the theory of defendants, plaintiff would be in the position of an undisclosed principal for whom Weinstock was acting and entitled to the benefit of the contract which Weinstock made with defendants unless that contract had been modified. Under that contract the price was $4 per month more than under the contract of January 4; but one of defendants testified that plaintiff had acquiesced in defendants' contention that the settlement should be made with Weinstock, and also testified that Weinstock had agreed to a reduction of much more than $4 per month, for the reason that the horses were not fit for the work. The issues which would arise if the right of recovery were to be based on defendants' theory that plaintiff was an undisclosed principal for whom Weinstock had acted, were neither litigated nor determined, and it does not conclusively appear that plaintiff is entitled to the amount of the verdict.

Order reversed.