## JOSEPH REGALI AND ANOTHER v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

June 23, 1922.

No. 22,921.

**New trial because of attorney's argument to jury.**

1. This court will not reverse an order denying a new trial because the attorney of the prevailing party in addressing the jury expressed an opinion that the evidence adduced sustained the claim of his client, especially when the trial court took pains to caution the jury against statements unless based on evidence.

**Negligence—questions properly submitted to jury.**

2. The items of negligence charged against defendant were sufficiently supported to warrant their submission to the jury.

**Contributory negligence for the jury.**

3. Contributory negligence was for the jury and not the court.

Action in the district court for St. Louis county by plaintiff Regali to recover $2,191.05 and by plaintiff corporation to recover $1,258.95, for damage to a motor truck at a street crossing over de-

[1]Reported in 188 N. W. 1003.

fendant's track. The case was tried before Fesler, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $1,858.95. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*John E. Palmer* and *Fryberger, Fulton, Hoshour & Ziesmer,* for appellant.

*Washburn, Bailey & Mitchell,* for respondents.

HOLT, J.

According to the verdict of the jury, defendant's negligence caused a collision between its train and plaintiff Regali's truck, where the company's tracks cross Twenty-first Avenue West, in the city of Duluth, which damaged the truck in the sum of $1,858.95. Regali carried insurance with the Employers Indemnity Company against loss from collision and the indemnity company paid him for a part of the loss sustained. The insurance company joined as plaintiff. The appeal is from the order denying defendant's motion in the alternative for judgment or a new trial.

Three grounds are assigned for a reversal of the order: (1) The evidence does not prove defendant's negligence; (2) it conclusively shows the contributory negligence of the driver of the truck; and (3) there was misconduct of plaintiffs' attorney which entitles to a new trial. The last ground may be disposed of by the remark that the statement of the attorney in his final argument to the jury, to which the assignment of error is directed, seems to be no more than an expression of his opinion as to the persuasiveness of the evidence adduced by plaintiffs, and, if anything at all bordering on the improper can be found therein, it was rendered harmless by the cautionary instructions of the court upon the subject.

South of the crossing mentioned is a dock from which Regali and others were engaged in hauling sand north on Twenty-first Avenue West, a paved street over an up-grade from the dock to the crossing. Beside the dock two or three industrial plants south of the crossing are reached by this street. North of the crossing business blocks line the street on both sides down to the tracks. Next to the tracks

to the south thereof one of the plants referred to has a warehouse, between which and the tracks sewer pipes were piled; but the height of the piles did not obstruct the view of the top of a box car to a person on a truck approaching the crossing from the south. The tracks of defendant from the crossing east curve to the north, and one track curves more abruptly to a roundhouse a few rods to the northeast.

The collision occurred shortly after 11 o'clock p. m. October 19, 1920. The night was dark, but not foggy. For some weeks trucks had been hauling sand from the dock across this crossing night and day, so that the drivers were familiar with the location and the obstructions to a view of approaching trains. This hauling had continued for such a length of time that the jury might infer that this train crew knew thereof. While Couture, Regali's driver, did not admit that he knew that defendant was in the habit of operating a train past this street every night near the time of the accident, he did say that trains might there be expected at any time. As Couture was driving the truck north loaded with sand, he ran on second on account of the grade. He estimates the speed at 4 or 5 miles an hour. One Baxter was coming south with a truck and approaching the crossing at the same time. The front lights of both trucks were burning. Defendant was then coming towards the street from the east with a locomotive pushing six box cars and one gondola car, the latter being the front car as the train was moving west. The switching crew estimate the speed of the train at 4 or 5 miles an hour, while Couture thinks the speed was nearly twice that mileage. He, however, did not see the train before it came in contact with his truck.

The train crew testified that one man was on the southwest corner of the gondola car with a lighted lantern, another on top of the box car next to it, and the third on the car next to the engine to relay the signals to the engineer. The two men on the westerly end of the train noticed the truck and its front lights when it was about 100 feet from the crossing, but assumed it would stop. When it did not, and, evidently, when it was upon the track the switchman on the gondola car jumped off and signaled for an emergency stop.

It was too late. The train struck the rear of Regali's truck; that in turn, as it was pushed westerly, struck the rear of Baxter's truck. Regali's truck was pushed along some 30 feet, overturned and damaged.

The complaint charged and the court submitted five allegations of negligence, viz: (1) A dangerous rate of speed; (2) lack of proper control; (3) lack of watch or lookout at the crossing; (4) want of signals or warning of the approach of the train; and (5) the insufficiency of the lights on the train. Defendant concedes the fourth specification of negligence was for the jury. There was no motion or request to withhold any of the others from them. However, if there was no evidence warranting the submission of any one or more of the charges of negligence submitted, a new trial must result. La Mere v. Railway Transfer Co. of City of Minneapolis, 125 Minn. 159, 145 N. W. 1068, Ann. Cas. 1915C, 667; Vasey v. Saari, 141 Minn. 103, 169 N. W. 478. But in considering that proposition here it should be noted that each specified charge of negligence is not set forth as an independent cause of action. Both from the pleading and nature of the negligent acts and omissions charged, each must be considered in relation to the others. For instance, the speed of the train cannot by itself constitute actionable negligence, unless considered in connection with the backing movement of a train with no headlight in front, no bell ringing except at the rear of the train, and no watchman at the crossing. We therefore think the court rightly called the jury's attention to the particular items of negligence pleaded and to which evidence had been directed.

The court was careful to charge that liability did not follow a mere finding that defendant was negligent as to any of the items specified, unless the jury could also find that such negligence was as to such item a proximate contributing cause of the collision. In considering each item, and as affected by the others, surrounding facts which emphasized the inference of negligence should not be overlooked. The record indicates that a roundhouse was in the direction towards which Couture would have to look for the approach of this train. A roundhouse is usually associated with lights, and, the night being dark, the lantern on top of this train might be mis-

taken for the more distant lights at the roundhouse or in other buildings near by. In the dark a light moving towards the observer may be readily taken to be stationary. Whether the white light of the ordinary lantern held as on this train was sufficient in view of the fact that there was no watchman on the crossing and no warning signals except such as were given from the engine at the rear was, we think, a question for the jury.

Particular stress is laid on the proposition that the situation did not warrant the submission of negligence for failure to maintain watchman, gates or signal bells at this crossing. A mere inspection of the photographs in evidence differentiates the case at bar from Hume v. Duluth & I. R. Co. 149 Minn. 245, 183 N. W. 288. Immediately to the north of the crossing Twenty-first avenue appears to be closely built up by business blocks, to the east and south are industries of varied descriptions as mentioned, and to the southwest a lumber-yard. Furthermore, the court nowhere submitted to the jury whether it was the duty of defendant to maintain gates or electric warning gongs at the crossing. The jury were merely left to say whether defendant was negligent in not having a watch or look-out at the crossing at this time. Such look-out or watch could have been provided by the switchman running ahead of the gondola car instead of riding it. The trucking then going on over the crossing at night could not well have been unknown to this train crew. The seventh instruction requested by defendant, not given, might have placed a heavier burden upon defendant than the jury could find under the instructions given. In passing upon the ultimate question of defendant's negligence from the matters charged, the facts and circumstances surrounding the collisions were properly shown. Such a fact was the absence of gates, signal gongs and watchman at the crossing, even though not charged in the complaint nor submitted to the jury as of and in itself a ground of recovery.

Criticism is made of the submission of the item whether the train was not under proper control. It was operated by a crew whose duty it was to keep a lookout, and control its movement if a collision at a crossing was imminent. Whether the proper look-out and control was exercised we deem a question for the jury. The two

men on the front part of the train noticed Couture while driving up towards the crossing. They did not swing the lantern or do anything to attract his attention or to stop or slow down the train until it was practically upon him.

Contributory negligence was not established as a matter of law. True, when darkness obscures and misleads the vision, greater vigilance is required in crossing a railroad track than in broad daylight. Nevertheless, in determining the question of negligence the jury have to take into account that darkness gives a different appearance to surroundings than does daylight.

The evidence is silent as to the hand in which the man on the first box car held his lantern. Usually men hold it in the right hand and face the way in which they are moving. If so in this case, his body or legs might have hid the rays of the lantern from Couture. Both the position of the man on the gondola car and its lower level suggest the possibility of the light from that lantern being similarly intercepted by the arm or body of the man and the sewer pipe pile. It is a significant fact that the driver of the truck from the north also failed to notice the approach of the train until hit, although the lights of Couture's truck might have interfered at some point with his view. Both drivers testify that they looked to the east to discover whether trains were approaching, but could not see the train or any light that they understood to be upon moving cars.

Most of the cases cited by defendant, where contributory negligence was held to be shown as a matter of law, were daylight collisions, like Anderson v. Great Northern Ry. Co. 147 Minn. 118, 179 N. W. 687; Carlson v. Chicago & North Western Ry. Co. 96 Minn. 504, 105 N. W. 555, 4 L. R. A. (N. S.) 349, 113 Am. St. 655; Schmidt v. Great Northern Ry. Co. 83 Minn. 105, 85 N. W. 935; Schneider v. Northern Pac. Ry. Co. 81 Minn. 383, 84 N. W. 124; Clark v. Northern Pac. R. Co. 47 Minn. 380, 50 N. W. 365; Weyl v. Chicago, M. & St. P. Ry. Co. 40 Minn. 350, 42 N. W. 24; Northern Pac. Ry. Co. v. Tripp, 220 Fed. 286, 136 C. C. A. 302.

Brown v. Milwaukee & St. Paul Ry. Co. 22 Minn. 165, was a case where there was ample opportunity to see the train carrying a bril-

liant headlight while it traveled more than 80 rods. In Carney v. Chicago, St. P. M. & O. Ry. Co. 46 Minn. 220, 48 N. W. 912, and Martin v. Great Northern Ry. Co. 132 Minn. 78, 155 N. W. 1047, pedestrians attempted to cross ahead of an approaching locomotive with headlight lit.

We think contributory negligence was for the jury.

The order is affirmed.