## GENERAL ELECTRIC COMPANY v. FLORIDA & SOUTHERN DREDGING COMPANY.[1]

·April 2, 1931.

No. 28,287.

*O'Brien, Horn & Stringer* ·and *M. V. Seymour,* for appellant.
*Doherty, Rumble, Bunn & Butler* and *Edgar G. Vaughan,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its motion for a new trial.

The action is to recover $1,443.19 and interest for materials, coils for certain motors, and labor, removing old coils and installing new ones, furnished between October 14, 1925, and November 11, 1925, defendant admitting contracting for the labor and materials. Three motors were involved, one 550 H. P. one 30 H. P. and one 7½ H. P. The large one was then at Hooker's Point Yard, Tampa, Florida, leased to the Northern Dredge & Dock Company, where it had been since July, 1925. The two smaller motors were delivered by de-

[1]Reported in 235 N. W. 876.

fendant to Hooker's Point Yard, where plaintiff was to do the work on the three motors.

Plaintiff caused the coils for these motors to be manufactured in St. Louis and sent to plaintiff's agent at Tampa. He proceeded with the work. Defendant directed that the work be discontinued, but the time when this direction was given is in controversy and is one of the important questions in the case. Defendant asserts that this direction was given on October 31, 1925, and it admits liability to that date for labor incurred in stripping the old motors amounting to $239.31. Plaintiff denies that the work was stopped at that time but says the plaintiff did stop the work on the large motor on November 7, 1925. Plaintiff claims to have continued the work on the small motors until November 11, 1925.

The motors were a part of the equipment of the hydraulic dredge *Nokomis* then near St. Petersburg. On October 29, 1925, defendant sold the *Nokomis* to Casey & Meyers, who on November 16, 1925, received from plaintiff the motors and uninstalled coils and transported the same to their dock in Tampa. At that time 60 per cent of the coils for the large motor and 70 per cent of the coils for the 30 H. P. motor had been installed. Thereafter plaintiff completed the installation on the dock of Casey & Meyers and at their expense.

In compliance with the contract with defendant for the furnishing of the coils and the doing of the work, plaintiff delivered the coils at the place where the work was to be done and seeks to collect pay therefor. It would seem that plaintiff extended credit to defendant, which thereby became the owner of the coils. The coils were in plaintiff's possession, and if it disposed of the same in violation of defendant's instructions it would be a conversion. Defendant pleads such a conversion as a counterclaim herein.

In July, 1925, defendant bought the *Nokomis* from the Northern Dredge & Dock Company resulting from an acceptance of an offer to sell "the dredge '*Nokomis*' and her outfit complete as given you in memorandum this morning." Defendant sold the *Nokomis* to Casey & Meyers "together with all equipment sold me [us] by

Northern Dredge & Dock Company." At the conclusion of the general instructions to the jury defendant's counsel took certain exceptions to the charge and requested a charge in substance that conversion is established if it appears that the plaintiff installed coils on these motors after it was advised by defendant not to do so. Thereupon the court said to the jury:

"I will further charge the jury that if you find from a fair preponderance of the evidence that the defendant advised the plaintiff that the motors had been sold to Casey & Meyers with the dredge *Nokomis,* and instructed it not to install the coils on the motors, and that thereafter the plaintiff did install the coils, contrary to those instructions, that the plaintiff thereby converted the coils."

Thereupon plaintiff's counsel took exception, and the following proceedings occurred:

The Court: [To plaintiff's counsel] "Do you want that instruction limited to, providing the title had not passed?

Mr. Vaughan: "Yes, sir.

The Court: "I will further instruct you, gentlemen, there is a limitation to this instruction which I have just given you, that if the title to the motors and the dredge had passed to Casey & Meyers at the time that those instructions were given, and that Casey & Meyers were not entitled, under the terms of the sale from the defendant to Casey & Meyers, to the coils, then there was a conversion; otherwise there was not a conversion.

Mr. Seymour: "The defendant excepts to that charge, in that the defendant contends that as a matter of law the coils were not the property of Casey & Meyers and did not pass to them, and that there is no issue of ownership of the coils in the case."

The additional charge first quoted was correct. The limitation added at the request of plaintiff's counsel permitted the jury to construe the writings evidencing the transfer of the *Nokomis* in the light of the oral testimony received and determine therefrom whether the title to the coils had passed to Casey & Meyers. This was error. There was no question but that defendant got title to

the *Nokomis,* nor is there any question but that defendant transferred title to the motors to Casey & Meyers when it transferred the *Nokomis* to them. The writing made by defendant in the form of an offer to Casey & Meyers, later accepted, gave them all that defendant got from the Northern Dredge & Dock Company in July. But these coils were not then in existence. They were in existence when defendant sold to Casey & Meyers, but the transfer cannot be construed as having anything to do with the title to the coils. The writings, together with the supplementary oral testimony, the admissibility of which we need not consider, gave no foundation for a finding that the title to the coils was in fact thereby transferred. From the entire record as it now stands it appears as a matter of law that defendant never transferred title to the coils to Casey & Meyers. The jury should have been so informed. The vice in the instruction was that the jury were authorized to find, as they may have done, that Casey & Meyers were entitled to the coils "under the terms of the sale from the defendant to" them. Whether the verdict rests upon such erroneous basis no one can say. This necessitates a new trial. Vasey v. Saari, 141 Minn. 103, 169 N. W. 478; Regali v. M. St. P. & S. S. M. Ry. Co. 152 Minn. 407, 188 N. W. 1003; Lindemann v. C. R. I. & P. Ry. Co. 154 Minn. 363, 191 N. W. 825; Sandberg v. G. N. Ry. Co. 175 Minn. 280, 220 N. W. 949.

The situation is not helped by the statement that when defendant acquired the *Nokomis* the motors contained coils. Nor is it important that those coils were then worthless. The fact that such worthless coils had been removed before defendant made the transfer to Casey & Meyers cannot upon the record be construed as transferring the title to the new coils. If perchance there was a breach of contract in the defendant's not delivering to Casey & Meyers the exact equipment which it acquired from the Northern Dredge & Dock Company, that would not operate as a transfer of the title to the subsequently acquired new coils. Defendant being the owner of the new coils could do with the title thereof as it saw fit. The transaction cannot be construed either as a matter of fact or as a matter of law to constitute a transfer of the title to the new coils.

It is also true that it appears as a matter of law that title to the motors was transferred to Casey & Meyers as a part of the equipment of the *Nokomis*.

Reversed.

DIBELL, J.
I dissent.

STONE, J. took no part.