# NATIONAL SURETY COMPANY v. WEBSTER LUMBER COMPANY.[1]

September 16, 1932.

No. 28,713.

[1]Reported in 244 N. W. 290.

*Fryberger, Fulton & Boyle,* for appellant.
*Courtney & Courtney,* for respondent.

DIBELL, J.

Action by the National Surety Company to recover of the defendant, Webster Lumber Company, some $5,000 or $6,000. The

basis of the action is the right of subrogation claimed by the plaintiff to the unused remedy of the state against the defendant, which purchased ties of the Larson Brothers Lumber Company, a corporation, which were cut by the company from state lands under a regularly issued permit and sold to the defendant, Webster Lumber Company. The Webster company paid the Larson company. The latter company did not pay the state. The plaintiff as its surety paid the state under compulsion and seeks to recover of the Webster company. The court directed a verdict for the plaintiff for $1,685.54. The defendant appeals from the order denying its alternative motion for judgment or a new trial.

■ The sale of timber involved was under the state timber act of 1905, L. 1905, p. 258, c. 204, now embodied with amendments unimportant here in G. S. 1923, §§ 6347-6394. The state timber act of 1925, L. 1925, p. 325, c. 276, effective May 25, 1925, which superseded the 1905 act, is embodied in 1 Mason, 1927, §§ 6394-1 to 6394-40.

On October 30, 1923, the Larson Brothers company obtained three permits in the usual form to cut timber from lands of the state in Koochiching county. The statute provided that the state auditor upon the purchase should issue a permit authorizing the purchaser to enter upon the land and cut and remove the timber according to the provisions of the statute. The statute, G. S. 1923, § 6364, provided:

"A separate bark, end or other mark shall be used on the timber cut under each permit, and, if the permit covers more than one season, it shall specify a separate mark to be used each season. It shall provide that the purchaser shall place the specified mark upon every piece of timber cut, and also plainly upon the end thereof the stamp mark MINN., and, that, in case of any failure to place the stump mark upon any such piece, the state shall have the right to take possession of the same wherever found. It shall contain such other provisions as may be necessary to secure to the state the title of all timber cut thereunder, wherever found, until full payment

thereof, and until all provisions of the permits have been fully complied with."

G. S. 1923, § 6379, provided:

"Every person who shall cut timber on state lands, and fail to mark the same as provided by the permit, or shall place any other mark thereon, and every person who shall sell, transfer, or manufacture any timber cut on state lands, before the amount due to the state therefor shall have been paid, shall be guilty of a gross misdemeanor."

G. S. 1923, § 6365, relative to a bond, is as follows:

"The purchaser, before execution of any permit, shall give bonds to the state, in double the value of timber covered by the permit, as shown by the amount of the bid and the record of appraisals as to quantity, conditioned upon the faithful performance of the terms of said permit and all requirements of law in respect to such sales, which bonds shall be approved in writing by the auditor and filed for record in his office."

G. S. 1923, § 6386, relative to the method of collection for the stumpage sold, provided as follows:

"Whenever the auditor shall deem it for the best interests of the state, he shall take possession of the timber for which such amount is due, wherever the same may be found, and sell the same at public auction. The proceeds of such sale shall be applied, first, to the payment of the expenses of seizure and sale; and second, to the payment of the amount due for such timber, with interest; and the surplus, if any, shall belong to the state; and, in case a sufficient amount is not realized to pay such amounts in full, the balance shall be collected by the attorney general. Neither payment of such amount, nor the recovery of judgment therefor, nor satisfaction of such judgment, nor the seizure and sale of such timber, shall release the sureties on any bond given pursuant to this chapter, or preclude the state from afterwards claiming that such timber was cut or removed contrary to law, and recovering damages for the

trespass thereby committed, or from prosecuting the offender criminally."

G. S. 1923, § 6383, provided that the auditor should keep a record of all sales in a book known as the "timber sales book"; and G. S. 1923, § 6394, provided that "the records kept by the auditor, pursuant to this chapter, shall be deemed notice of the facts therein set forth." Section 6364 required permits to be filed with the surveyor general.

Each permit issued to the Larson Brothers Lumber Company provided as follows:

"Whereas, the statute provides and the purchaser agrees that the title to all of said timber before and after cutting, wherever found, shall remain in the state until full payment therefor, and that any attempted sale or disposition thereof by the purchaser before he has made full payment therefor as herein provided, shall be without force or effect, and the title of the state to said timber or the lumber manufactured therefrom shall continue unimpaired until the same and the whole thereof has been fully paid for as herein provided.

"Now, therefore, by this permit, * * * (here follows a recital that 25 per cent of the 'estimated total purchase price of said timber so conditionally sold' has been paid).

"This permit is issued and accepted upon the condition and subject to the terms and limitations, contained in the statutes of the state and those above specified, as well as those hereinafter recited, to all of which the state, the purchaser and the sureties upon the bond executed by the purchaser, approved and filed contemporaneously herewith, severally agree."

The ties taken from the state by the lumber company bore the state mark, that is, the number of the contract with the word "MINN." indented on the end.

The plaintiff, National Surety Company, on December 28, 1923, executed a bond with this condition:

"The condition of this obligation is such that whereas, the state under the provisions of the statute in such case made and provided,

has granted a permit for the cutting and removal by the principal of certain timber from certain state lands therein described, * * *

"Now, if the said principal shall faithfully comply with all the terms and conditions of said permit, and any duly granted extensions thereof, and shall fully perform the terms thereof and shall keep, perform and obey all the requirements of law in respect to such timber sales, and shall pay to the state all such sums of money as shall accrue to it under said permit, then this obligation shall be void, but otherwise shall remain in full force and effect."

The Larson Brothers company did not pay the state. The defendant, Webster Lumber Company, paid Larson Brothers company. The plaintiff under compulsion paid the state.

We have then this situation, subject to explanations or additions proper to be made as we proceed. The Larson Brothers company were permit holders under the 1905 act. They cut ties from lands in Koochiching county and landed them on the railroad a few miles distant. Under the statute title was reserved in the state until full payment. The permit so recited. The permit holder executed the bond required by statute. The statute gave the state certain remedies but said nothing of the right of subrogation in the surety. Larson Brothers company did not pay. It sold to the defendant, which took the ties and sold them to the Great Northern, and they were billed over the Great Northern railway to Larimore, North Dakota. The bond referred to the permit and to all provisions of the statute. The ties were marked as required by the statute. In that condition they were sold by the Larson people to the defendant while on the landing. The defendant did not see the ties. It paid Larson Brothers company. The latter did not pay the state. The question is whether the plaintiff by right of subrogation has recourse against the defendant purchaser.

■ The plaintiff's claim is that upon payment it had the equitable right of subrogation to whatever remedy the state would have had against Larson Brothers company, or against the timber, or against anyone connected with the transaction, had it, the plaintiff surety, not paid. The rule, variously worded, is that when a

surety pays the obligation of his principal for which he is surety he is subrogated to the remedies of the obligee in the bond and may pursue such remedies until met by equal or superior equities in the one sued. His right is not created by contract. It arises in equity. In McArthur v. Martin, 23 Minn. 74, 78, this is said:

"So soon as the surety pays the debt of his principal there arises in his favor an equity to have the securities held by the creditor for his debt turned over to him, and to avail himself of them as fully as the creditor could have done. For the purpose of indemnity, he is entitled to be subrogated to all the rights, remedies, and securities of the creditor, and entitled to enforce all his liens, priorities, and means of payment as against the principal. Payment by a surety, although it extinguishes the remedy and discharges the security as respects the creditor, does not have that effect as between the surety and his principal. As between the latter, it is in the nature of a purchase by the surety from the creditor. It operates in equity as an assignment of the debt and securities."

The statute contained no specific provisions for subrogation of the surety to the rights of the state upon payment. The 1925 act, L. 1925, p. 325, c. 276, § 18, 1 Mason, 1927, § 6394-18, enacted after the facts in the case arose, specifically provides that the paying surety shall be deemed subrogated to all the rights of the state in respect of the timber paid for; that it may pursue the timber and recover therefor, or may have any appropriate relief in relation thereto which the state might have had if the surety had not made payment; that no assignment from the state shall be necessary; but that the certificate of the state auditor showing the amount of the timber, the lands upon which it was cut, and the amount paid therefor shall be prima facie evidence of the facts. It is not considered by the parties that this statute affects the remedy here.

Title was reserved by the state until payment was made. Larson Brothers company should not have removed the timber until payment. When sold by the Larson Brothers company to the Webster company, it was at a landing 10 or 12 miles from the land where

cut. There is no difficult question relative to a conversion. There was a conversion by the Larson Brothers company when it disposed of the ties to the Webster company and a like actual conversion by the Webster company. The state might have sued Larson Brothers company; it might have sued it on its promise to pay; it might have waived the tort of conversion; it might have taken the ties; or it might have sued the Webster company in conversion. The plaintiff was subrogated to the same rights. The general principle is without doubt. We note the following cases sufficiently controlling on principle though not alike in facts. Torp v. Gulseth, 37 Minn. 135, 33 N. W. 550; Carter, Rice & Co. v. Cream of Wheat Co. 73 Minn. 315, 76 N. W. 55; Sheldon-Mather T. Co. v. Itasca Lbr. Co. 117 Minn. 355, 135 N. W. 1132; National Surety Co. v. Berggren, 126 Minn. 188, 148 N. W. 55; Hindahl v. American Loan Society, 180 Minn. 447, 231 N. W. 408; General Elec. Co. v. Florida & S. D. Co. 183 Minn. 178, 235 N. W. 876; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 1926, 1932, 1934, and cases cited.

The defendant claims that the rights given the plaintiff as subrogee prior to the 1925 act were such as are specified in G. S. 1923, § 6386; and that the state might take possession of the timber and sell it and apply the proceeds as there directed and pay itself. The state did not do this. It might have done it. It might have recovered of the purchaser of the timber from the state, in this case Larson Brothers Lumber Company. This it did not do. It might have recovered on the bond. This it did do; or, rather, it exercised compulsion and took payment. And it is the claim of the defendant that the state had no other remedies; and so the plaintiff was subrogated to no remedy against the purchaser, the Webster Lumber Company.

The state did not need a supporting statute that it might sue on the bond or sue in conversion. It may not have been able without a statute to use the specific one authorized by way of taking possession, although it could have maintained replevin; and perhaps it could have worked out substantially the same relief because it had reserved title. There is no reason why it might not have main-

tained a suit for a common law conversion against Larson Brothers company and against the defendant, Webster company, and therefore the surety company as subrogee may. It might have sued Larson Brothers company in contract on the permit for the purchase price. When the plaintiff paid, it might have sued its principal without the aid of the doctrine of subrogation. It was not an insurer of its principal against the result of its default. In effect it was the insurer of the state against such default. But because it might sue its principal directly, without the aid of the doctrine of subrogation, it was not prevented from invoking the unused remedies of the state until it met an obstructing equity. Indeed, G. S. 1923, § 6386, purports to apply only when the auditor deems it for the best interests of the state to take possession of the timber.

■ The plaintiff as subrogee could pursue whatever remedy it found in the state until it met an equal or superior equity.

The surety company was compelled to pay. The Webster company could buy or not as it chose. The ties were stamped as required by G. S. 1923, § 6364. The stamp, the abbreviation "MINN.," was on the end of each tie. The contract number was stamped.

The Webster company was familiar with logging operations and the sale of ties in the northern country. It had bought and sold for years. George B. Webster was its president and a witness in its behalf. He was entirely frank. He knew the law in reference to stamping the ties and knew the practice was observed. He knew where information could be had. He had quite good information as to conditions in the timber country. He knew the law as to reservation of title by the state. If before it bought his company had taken a look it would have known it was buying state timber. It could have easily traced the source of it and have found that the holder of the timber permit had not paid although it had removed the timber. G. S. 1923, § 6394, provided that the records in the auditor's office should be notice. And see uniform sales act, § 23, G. S. 1923, (2 Mason, 1927) § 8398. It must be held as a matter of law that the defendant had notice that title to the ties was in the state.

■ The defendant argues with some force that it was in the nature of a broker or sales agent and so was not liable.

The negotiations relative to the ties started about December 10, 1924, by a letter from Larson Brothers Lumber Company, at Kelliher, Minnesota, to the Webster Lumber Company, at Minneapolis. It made inquiry as to prices, suggested that they were lower than the year before, and that some shading in grading might be necessary. There was a telephone conversation, and then a letter of January 26, 1925, in which Larson Brothers company wrote the Webster Lumber Company that it could send its inspector to Littlefork and commence to load the ties they had in their yard as a "tryout," and stating that if they found the inspection satisfactory they would enter into a contract.

On January 28, 1925, the Webster Lumber Company wrote the Larson people saying that they would give ten cents "above the Great Northern published line prices, less $.05 per tie as our commission for handling." A man was sent from the Great Northern and made the inspection, which seems to have been satisfactory to all. The line price, the evidence shows, is the price given by the railroad for small amounts of ties along the road. It was usual to give something like ten cents above when purchasing in large lots from a dealer or perhaps from the producer. There is a claim by the defendant that it was only a sort of broker or selling agent and therefore not liable for a wrongdoing or neglect of the lumber company. It must be held, as it was held by the trial court, as a matter of law, that the Webster company within the facts of the case was a purchaser from the Larson Brothers Lumber Company and a seller to the Great Northern.

There is no particular question but that if a recovery was to be had the trial court fixed the proper amount. There was evidence of such value and none opposed.

Order affirmed.