# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

98-6071MN

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Bruce D. Yanke, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Minnesota Trust Company of Austin, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellee, | * | District of Minnesota |
| | * | |
| vs. | * | |
| | * | |
| Bruce D. Yanke, | * | |
| | * | |
| Defendant - Appellant. | * | |

Submitted: February 3, 1999
Filed: March 4, 1999

Before KOGER, Chief Judge, WILLIAM A. HILL and SCHERMER, Bankruptcy Judges

KOGER, Chief Judge

Debtor Bruce D. Yanke appeals the Judgment of the Bankruptcy Court[1] ordering that Minnesota Trust Company of Austin ("Minnesota Trust") recover from Yanke the sum of

---

[1] The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota.

$191,806.14 plus costs, and declaring that debt to be excepted from Yanke's discharge under 11 U.S.C. § 523(a)(4).

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(b) and (c).

FACTUAL BACKGROUND

In 1993, Yanke was appointed as successor guardian for the person and the estate of Michelle Laganiere, a ward in a guardianship proceeding commenced in the Probate Division of the Minnesota State District Court. At the time of Yanke's appointment, Laganiere was a minor. In order to procure the issuance of letters of guardianship, Yanke obtained a bond from Minnesota Trust in the face amount of $700,000. In connection with the issuance of this bond, Yanke signed a guaranty in favor of Minnesota Trust under which he committed to repay Minnesota Trust all sums that it might be required to pay as surety.

At the time Yanke assumed his duties as Laganiere's guardian, her guardianship estate had a balance of $655,876.62. By the time Yanke's status as guardian was terminated in February, 1995, the balance in the guardianship estate had decreased to $426,839.54. Laganiere sought to recover the deficiency from Yanke through a motion brought in the guardianship proceeding wherein she alleged that Yanke had breached his duties to the estate. Minnesota Trust defended its and Yanke's interests as to this motion in the state court guardianship proceedings.

After an evidentiary hearing, the state court entered Findings of Fact, Conclusions of Law, and an Order for Judgement on January 26, 1996, finding that Yanke had breached his duty as guardian in that he had overcompensated himself and had expended funds of the guardianship estate in excessive amounts and for inappropriate and unreasonable purposes. Specifically, the state court concluded, among other things, that Yanke had breached his duty to act as a guardian of the person and estate of Laganiere; he had breached his duty to appropriately manage, possess, and care for funds of the estate; he had breached his duty to use the funds in a reasonable fashion for the care and protection of Laganiere; and he had

failed to account for certain funds from the estate and had breached a duty to do so. The state court concluded that Yanke had an obligation to reimburse the guardianship estate or Laganiere the sum of $179,682.22 and that Minnesota Trust's bond should be forfeited in that amount. Accordingly, judgment was entered in that amount against Yanke and Minnesota Trust.

Minnesota Trust appealed the state court judgment, but was unsuccessful in that appeal. In mid-January, 1997, it paid Laganiere the sum of $191,806.14, representing the judgment, costs, disbursements and interest. On January 14, 1997, Laganiere's counsel executed a satisfaction of judgment which states that a judgment had been entered in favor of Laganiere and against Yanke and Minnesota Trust, and that the judgment had been paid and satisfied in full. On January 15, 1997, Laganiere also executed a release of liability as to Minnesota Trust only, reciting that she released Minnesota Trust from "any and all claims known or unknown, and any actions or causes of action in any way arising out of or connected with the lawsuit entitled In re: Guardianship of Michelle Ann Yanke Beckman Laganiere," as well as any further liability on the surety bond that Minnesota Trust had issued in favor of Yanke.

Seeking to recover the amount it had paid to Laganiere on the bond, Minnesota Trust commenced a lawsuit against Yanke and a co-guarantor on the bond.[2] That lawsuit was pending in the Minnesota State District Court when Yanke filed his petition for bankruptcy relief on December 9, 1997.

Minnesota Trust then filed an adversary proceeding in Yanke's bankruptcy case, effectively seeking two adjudications: (1) that Yanke is indebted to it in the amount of $191,806.14 under the surety on the bond; and (2) that the debt was excepted from Yanke's Chapter 7 discharge under 11 U.S.C. § 523(a)(4). Yanke answered and both parties filed cross motions for summary judgment. The Bankruptcy Court found in favor of Minnesota Trust on both issues, granted its motion for summary judgment, and entered judgment in

---

[2] No issues relating to the co-guarantor have been raised or discussed in this appeal.

favor of Minnesota Trust. Yanke appeals. For the reasons that follow, we affirm the decision of the Bankruptcy Court.

## STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).[3] Where the case was decided on cross-motions for summary judgment and a stipulation of undisputed facts, the parties agree that there are no disputed issues of material fact and summary judgment is particularly appropriate. See W.S.A., Inc. v. Liberty Mut. Ins. Co., 7 F.3d 788, 790 (8th Cir. 1993); Coca-Cola Bottling Co. v. Teamsters Local Union No. 688, 959 F.2d 1438, 1440 (8th Cir.1992). Furthermore, summary judgment is warranted under collateral estoppel where the material facts have been settled by a final order or judgment entered in an earlier proceeding and the only question remaining is the application of a different substantive law to those established facts. Grogan v. Garner, 498 U.S. 279, 284-85 n.11 (1991).

We review the grant of summary judgment *de novo*, and the bankruptcy court's findings of fact for clear error. Nelson v. Kingsley (In re Kingsley), 208 B.R. 918, 920 (B.A.P. 8th Cir. 1997) (citing Waugh v. Internal Revenue Serv. (In re Waugh), 109 F.3d 489, 491 (8th Cir. 1997); Christians v. Crystal Evangelical Free Church (In re Young), 82 F.3d 1407, 1413 (8th Cir. 1996); United States v. Roso (In re Roso), 76 F.3d 179, 181 (8th Cir. 1996)). The question before us on appeal is whether the record, when viewed in the light most favorable to Yanke, shows that there is no genuine issue as to any material fact and that Minnesota Trust was entitled to judgment as a matter of law. Id.

---

[3] Fed. R. Civ. P. 56 is made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

DISCUSSION

In his sole point on appeal, Yanke asserts that the bankruptcy court erred in concluding that Minnesota Trust's subrogation claim survived full satisfaction of Laganiere's judgment and that the bankruptcy court's decision is contrary to Minnesota subrogation law. In other words, Yanke contends the bankruptcy court erred in finding that Minnesota Trust possessed a subrogation claim at all, and therefore, it erred in finding Yanke owed the money to Minnesota Trust under that theory in the first place.

Subrogation has been broadly defined as "the substitution of one person in the place of another with reference to a lawful claim or right." Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1314 (8th Cir. 1991) (quoting 73 Am. Jur. 2d, Subrogation § 1 (1974)). It permits one who pays another's debt to stand in the shoes of the party that received the payment and to assert whatever rights that party had. See Hermeling v. Minnesota Fire & Cas. Co., 548 N.W.2d 270, 273 (Minn. 1996); St. Paul Fire & Marine Ins. Co. v. Perl, 415 N.W.2d 663, 665 (Minn. 1987). "Subrogation rests on the maxim that no one should be enriched by another's loss." Medica, Inc. v. Atlantic Mut. Ins. Co., 566 N.W.2d 74, 77 (Minn. 1997).

There are two kinds of subrogation: Equitable subrogation and conventional subrogation. See Medica, 566 N.W.2d at 77. Equitable subrogation, also referred to as "legal subrogation," is a product of common law and is intended "to place the charge where it ought to rest, by compelling the payment of the debt by him who ought in equity to pay it." Id. (citations omitted); see also Universal Title Ins., 942 F.2d at 1315. Conventional subrogation, on the other hand, is contractual -- it is a product of an agreement between the insured and the insurer. Id. In the case at bar, because there apparently was no contractual provision providing for subrogation, the bankruptcy court based its decision upon the theory of equitable subrogation. The parties also limit their discussion to equitable subrogation. As a result, we address only that issue as well.

As the bankruptcy court in this case noted, equitable subrogation in the case of surety bonds has long been recognized in Minnesota:

5

> [W]hen a surety pays the obligation of his principal for which he is surety he is subrogated to the remedies of the obligee in the bond and may pursue such remedies until met by equal or superior equities in the one sued.

Nat'l Surety Co. v. Webster Lumber Co., 244 N.W. 290, 293 (Minn. 1932).  Furthermore:

> So soon as the surety pays the debt of his principal there arises in his favor an equity to have the securities held by the creditor for his debt turned over to him, and to avail himself of them as fully as the creditor could have done.  For the purpose of indemnity, he is entitled to be subrogated to all the rights, remedies, and securities of the creditor, and entitled to enforce all his liens, priorities, and means of payment as against the principal.  Payment by a surety, although it extinguishes the remedy and discharges the security as respects the creditor, does not have that effect as between the surety and his principal.  As between the latter, it is in the nature of a purchase by a surety from the creditor.  It operates in equity as an assignment of the debt and securities.

Id. (citation omitted).  As the bankruptcy court also pointed out, the same principle applies in the case of insurer, insured, and tortfeasor:

> It is the universal rule that upon payment of a loss, an insurer is entitled to pursue those rights which the insured may have against a third party whose negligence or wrongful act caused the loss.

Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co., 189 N.W.2d 404, 406 (Minn. 1971).

Yanke concedes that Minnesota Trust had, at one point, a right to pursue him for payment under a theory of subrogation.  However, Yanke asserts that right was extinguished upon execution of the satisfaction of judgment in the state court.  He points out that the Minnesota Supreme Court stated in Great Northern Oil that, "the insurer, as the subrogee, is entitled to no greater rights than those which the insured-subrogor possesses at the time the subrogee asserts the claim, as the subrogee merely 'steps into the shoes' of the

6

subrogor." Id.; see also Rowe v. St. Paul Ramsey Med. Ctr., 472 N.W.2d 640, 644 (Minn. 1991) (citations omitted).

Focusing on this language, Yanke contends that because the subrogee (Minnesota Trust) is entitled to only those rights that the subrogor (Laganiere) possesses *at the time the subrogee asserts the claim,* and because Laganiere had executed a satisfaction of the judgment prior to the filing of this adversary action, Minnesota Trust had no subrogation right when it filed the instant action. In other words, Yanke asserts that because Laganiere had executed and filed a total satisfaction of the judgment prior to the time Minnesota Trust brought the instant adversary action, Laganiere no longer had any claim against Yanke at that time, and so Minnesota Trust no longer had a claim through subrogation against Yanke. In sum, Yanke asserts that Laganiere's executing and filing the satisfaction of judgment destroyed Minnesota Trust's subrogation interest.

We agree with the bankruptcy court's rejection of this argument and its conclusion that the execution of the satisfaction of judgment did not destroy Minnesota Trust's subrogation claim. We further believe Yanke stretches the statement made in Great Northern Oil, namely that the subrogee is entitled only to those rights the subrogor possesses at the time the subrogee asserts the claim, too far.

According to the Minnesota Supreme Court, the surety (Minnesota Trust) becomes subrogated to the remedies of the obligee (Laganiere) "when [the] surety pays the obligation of his principal." Nat'l Surety Co., 244 N.W. at 293. "*So soon as the surety pays the debt of his principal* there arises in his favor an equity to have the securities held by the creditor for his debt turned over to him, and to avail himself of them as fully as the creditor could have done." Id. (emphasis added). Moreover, the right of subrogation remains inchoate *until such time as the subrogee makes a payment.* See Hermeling v. Minnesota Fire & Cas. Co., 548 N.W.2d at 273-74 (emphasis added). "The cause of action in subrogation therefore accrues prior to payment, but is not ripe for adjudication until payment is made by the subrogee." Id. at 274. Accordingly, we believe that the surety's right of subrogation remains inchoate until payment is made to the obligee, but at the moment the payment is

7

made, the surety steps into the shoes of the obligee and becomes entitled to pursue his cause of action in subrogation against the principal.[4]

Yanke concedes that it was not the act of payment that destroyed the subrogation; rather, he asserts it was the execution of the satisfaction of judgment that destroyed Minnesota Trust's subrogation interest. However, he cites no authority directly supporting this proposition and we believe that argument is contrary to Minnesota law. Furthermore, the Minnesota Supreme Court has held that when the surety pays the creditor, the arrangement is in the nature of a purchase of the claim by the surety from the creditor. Nat'l Surety Co., 244 N.W. at 293. Under this reasoning, at the moment Minnesota Trust paid Laganiere, it effectively "purchased" Laganiere's claim against Yanke. As a result, the subsequent satisfaction of judgment executed by Laganiere would have no effect on Minnesota Trust's claim against Yanke. This conclusion is consistent with the Court's pronouncement that although payment by the surety extinguishes the remedy and discharges the security as respects the creditor, it does not have that effect as between the surety and his principal. Id.

Equitable subrogation is a highly favored doctrine and is to be given a liberal application. See Universal Title Ins. Co., 942 F.2d at 1315; 73 Am. Jur. 2d, Subrogation § 7 (1974). We believe the result reached by the bankruptcy court has achieved the purpose of equitable subrogation, namely, "working out . . . an equitable adjustment and the doing of complete and perfect justice between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." Id.

---

[4]   See also Putnam v. Comm'r of Internal Revenue, 352 U.S. 82, 85, 77 S.Ct. 175, 177, 1 L.Ed.2d 144 (1956), wherein the Supreme Court expressed, "The familiar rule is that, *instanter* upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes."

8

Finally, Yanke refers us to the Minnesota statute which requires that a joint debtor on a judgment who wishes to seek contribution must file a notice with the Court Administrator within ten days in order to preserve the judgment for that purpose. See Minn. Stat. § 548.19 (1996). However, even assuming this statute is applicable in an action asserting subrogation of a surety on a bond such as this one, this particular case is based on equitable subrogation, not statutory subrogation. As a result, we believe the notice requirement found in Minn. Stat. § 548.19 is inapplicable to the case at bar.

## CONCLUSION

Because we agree with the bankruptcy court that Minnesota Trust's right to subrogation was not extinguished by Laganiere's execution of the satisfaction of judgment in the state court, we find that the bankruptcy court was correct in concluding that under the principles of equitable subrogation, Minnesota Trust is entitled to judgment against Yanke under the surety on the bond. Because Yanke disputes none of the bankruptcy court's additional findings or conclusions, the Judgment is affirmed.


A true copy.


Attest:


CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT